809 So.2d 52 (2002)
STATE of Florida, Appellant,
v.
Myron ERNST, Appellee.
No. 5D01-1247.
District Court of Appeal of Florida, Fifth District.
February 8, 2002.
*53 Robert A. Butterworth, Attorney General, Tallahassee, and David H. Foxman, Assistant Attorney General, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and Michael S. Becker, Daytona Beach, Assistant Public Defender, Daytona Beach, for Appellee.
PETERSON, J.
The State appeals the trial court's suppression of statements made by Myron Ernst during an interview by two New Smyrna Beach police officers at the Osceola County jail. The officers were investigating a theft that occurred in New Smyrna Beach. The victim's identification documents were found in a stolen vehicle being driven by Ernst when he was stopped by Osceola County Sheriff's deputies.
After entering the interview room at the jail, the officers informed Ernst that they were investigating a burglary in New Smyrna Beach. They began by obtaining basic information such as name and date of birth and then asked if Ernst had ever been to New Smyrna Beach. When the response was "no," the officers informed Ernst that they had a photograph of him taken in New Smyrna Beach. The photograph had been taken at a New Smyrna Beach convenience store with a security camera that depicted Ernst and another person. Ernst insisted that he had never been there and the officers replied that it would then be impossible for them to have such a photograph. The interview terminated when Ernst said that "maybe he should talk to an attorney."
As the officers were about to leave, Ernst asked about the picture. They asked if he was sure that he wanted to talk to them without an attorney present. He responded affirmatively, his Miranda[1] rights were read to him and he signed a waiver of rights. Ernst then saw the picture and the interview continued. He was later arrested for the New Smyrna Beach theft and moved to suppress the statements made during the interview.
At the suppression hearing, the court found that the officers had used an improper "stratagem"[2] and had engaged in *54 gamesmanship in their approach to interviewing Ernst. The court concluded that the officers had not used an honest and straightforward approach to determine if Ernst would talk to them, and suppressed the statements made during the interview.
A trial court's ruling on a motion to suppress is presumptively correct, and the evidence and reasonable inferences must be interpreted in a manner most favorable to an affirmance. See McMaster v. State, 780 So.2d 1026, 1028 (Fla. 5th DCA 2001). Notwithstanding, the trial court's legal conclusions are reviewed under a de novo standard. See id.
The trial court primarily relied upon Almeida v. State, 737 So.2d 520 (Fla.1999), cert denied, 528 U.S. 1182, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000), in which the court held that if "at any point during custodial interrogation, a suspect asks a clear question concerning his or her rights, the officer must stop the interview and make a good-faith effort to give a simple and straightforward answer." Id. at 525. The Almeida opinion also mentioned gamesmanship, which the trial court here found important: "Article I, section 9, Florida Constitution, requires that whenever a suspect's rights are clearly raised in the interrogation roomwhether by police or the suspectofficers must pursue the matter in an open and forthright manner. In such a situation, gamesmanship of any sort by the officers is forbidden." Id. at 526.
The Almeida opinion clearly referred to gamesmanship in which the police engage when discussing a suspect's constitutional rights. During the discussion, the officers must clearly and openly explain the suspect's rights. Almeida is not applicable to the officers' reference to the photograph of Ernst because his rights were not being discussed at that time.
Two distinct issues are presented. The first is whether the officers' initial, unwarned questioning rendered Ernst's later, warned statements inadmissable. The second is whether the officers' actions in response to Ernst's comment that he may need counsel was lawful.
Oregon v. Elstad 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985)[3] is dispositive of the first issue. There the Supreme Court held:
We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.
In the instant case, the officers' conduct surrounding Ernst's initial statements about being in New Smyrna Beach was clearly not the coercive tactics discussed by the Supreme Court in Elstad. In a lengthy footnote, the Supreme Court referred to numerous cases involving coercion to demonstrate its meaning. Elstad, 470 U.S. at 312, n. 3, 105 S.Ct. 1285 (including such conduct as 48 hours of interrogation (Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2cl 630 (1968)), threatened violence (Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967)), and deprivation of food and sleep (Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967))). See also State v. Chavis, 546 *55 So.2d 1094, 1097 (Fla. 5th DCA 1989) (finding that reciting the evidence against a suspect does not constitute coercion.) The Supreme Court declared those improper tactics to have been "designed to break the suspect's will." Elstad, 470 U.S. at 312, 105 S.Ct. 1285. Admittedly the officers' reference to a photograph showing his presence in New Smyrna Beach may have been designed to arouse Ernst's curiosity, but the tactic was not executed in a manner calculated to break his will.
At least one court has examined improper non-coercive interview tactics. In United States v. Esquilin, 42 F.Supp.2d 20 (D.Me.1999), the Maine District Court was confronted with facts similar to those of the instant case. A detective routinely asked questions before conveying Miranda warnings in order to obtain damaging evidence. The defendant argued that his statements should have been suppressed because those improper tactics could not be condoned. The court gave a helpful response:
Police investigation is a rough business and necessarily involves trickery and strategy to solve a specific crime that has been or is being committed. Although the Court does not condone tactics designed to take advantage of a suspect's ignorance of his or her constitutional rights, the tactics engaged in by Officer Brady in this case do not shock the conscience and are not so outrageous that the Court should suppress the fruit of such tactics. Indeed, the Supreme Court held in Elstad that such fruits are not to be automatically suppressed as evidence.
Id. at 33-34.
The court also offered some advice:
The Court notes, for the elucidation of Officer Brady and law enforcement officers generally, that, to the extent this conduct is a deliberate and repeated strategy, it is an unwise one. It flirts with the risk of ultimate exclusion of otherwise admissible evidence. For officers to deliberately engage in such risktaking calls in question the good faith of their intentions in respecting the public's constitutional rights. Having created such a threatening penumbra, they should not be surprised if in future cases where similar conduct is indulged, a very slight factual deviation in the circumstances may lead courts to call down upon them the exclusionary doom with which they have chosen to trip the light fantastic.
Id. at 33, n. 5.
Esquilin was affirmed on appeal, but the First Circuit found that "improper tactics" was not a separate concept apart from coercive conduct. United States v. Esquilin, 208 F.3d 315, 320 (1st Cir.2000). It acknowledged that the Supreme Court used some "imprecise language" in Elstad, but declared that a complete review of that case revealed that "deliberately coercive or improper tactics" was a single concept that described police conduct which would make the initial statements involuntary. Id. In United States v. Orso, 266 F.3d 1030, 1037 (9th Cir.2001), the Ninth Circuit concurred with this logic.
We find that the officers did nothing in the instant case to make Ernst's initial statements involuntary. There were no threats of violence or other forms of coercion. They merely asked Ernst if he had been to New Smyrna Beach and told him they had a picture of him there. Although his response to this unwarned question was properly deemed inadmissable, nothing surrounding it made it involuntary and the subsequent, warned statements were admissible.
The second issue is whether the officers' conduct was appropriate after *56 Ernst made an equivocal reference to counsel. As soon as he mentioned counsel, the officers were prepared to leave. It is only when Ernst reinitiated the conversation and made it clear that he wanted to talk without an attorney by signing a waiver of rights that they continued. This was appropriate conduct. See Lukehart v. State, 776 So.2d 906, 919 (Fla.2000); Aycock v. State, 528 So.2d 1223, 1224 (Fla. 2nd DCA 1988).
We vacate the order of suppression and remand for further proceedings. Our analysis of Elstad, and review of the record leads us to find that while Ernst's initial, unwarned statements may have been inadmissible, they were voluntary and not the product of improper police coercion. After the Miranda warnings were read to Ernst, his subsequent statements were admissible. There was also nothing inappropriate about the officers' conduct after Ernst made a reference to an attorney. The officers had terminated the interview. It was Ernst who reinitiated the conversation and who thereafter validly waived his rights.
ORDER VACATED; REMANDED.
HARRIS and ORFINGER, R.B., JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The term "stratagem" may not have been the precise term to describe the method used by the two officers. Our research indicates the term is used in cases dealing with police tactics in circumvention of a defendant's 6th Amendment right to counsel, such as Brown v. State, 725 So.2d 1164 (Fla. 2nd DCA 1998). In those cases, the term describes efforts of police to use a secret agent to illicit incriminating statements while the defendant is incarcerated.
[3] Elstad has been applied in Florida by Lukehart v. State, 776 So.2d 906, 917 (Fla.2000) and State v. Nash, 718 So.2d 269, 270 (Fla. 5th DCA 1998).