DAVIS, Judge,
Dissenting.
After personally reviewing the videotape of the detectives’ questioning of Cilio, I must respectfully dissent from the majority’s opinion. The legal conclusions that Cilio was not in custody for the purposes of Miranda and that Cilio did in fact waive his Miranda rights are given a de novo review. See Connor v. State, 803 So.2d 598 (Fla.2001); State v. Ernst, 809 So.2d 52 (Fla. 5th DCA 2002). Furthermore, the findings of fact of the trial court are subject to a higher review than the usual “clearly erroneous” test because this court has the opportunity to review the same evidence viewed by the trial court at the suppression hearing. See Thompson v. State, 548 So.2d 198, 204 n. 5 (Fla.1989).
My evaluation of the totality of the circumstances leads me to conclude that this was in fact a custodial interrogation and that Cilio did not knowingly and freely waive his right to counsel prior to the questioning regarding the offenses for which he was subsequently charged.
These legal conclusions are based on the location of the interview; the size of the room; the proximity of the detectives to Cilio, particularly during the questioning regarding the accusations against him; the manner of the questioning; and the intent of the detective to discourage Cilio from calling his attorney, all of which, I believe, would have caused a reasonable person to believe that he was not free to leave but rather was being questioned as though he was under arrest. See Traylor v. State, 596 So.2d 957 (Fla.1992); State v. Alioto, 588 So.2d 17 (Fla. 5th DCA 1991).
I also disagree with the majority’s conclusion that Cilio waived his right to have an attorney present during questioning. It is undisputed that when the detective advised Cilio of his right to an attorney, Cilio mentioned that he had an attorney but was unsure if he could be reached. While the majority does not interpret this statement as a request for counsel, I must disagree. Not only do I believe that a fair reading of Cillo’s statement reveals it to be a request for counsel, but the detective on the scene clearly believed it to be such, given his immediate response to Cilio, “Why do you need an attorney? You don’t even know what we are going to talk about.” The detective then attempted to dissuade Cilio from his request. Ignoring Cillo’s earlier request, the detective asked Cilio if he would talk with them, and Cilio responded, “Not if I don’t know what it’s about.” The detective responded: “Well, how am I going to explain what this is about unless I can talk to you. You tell me how I can do that without talking to you and I’ll do that. I don’t think I can. Okay?” When the detective then asked a second time if Cilio would talk with them, Cilio responded that he was not sure but that he may need his attorney depending on what the questions were about. Clearly, Cilio had not been dissuaded from his earlier request. He cannot be said to have waived his right as of that time.
Undeterred, the detective then began to ask Cilio questions regarding a recent criminal mischief incident in which Cilio had been the victim. After four to five minutes of such “safe” questioning, the detective suddenly changed gears and quickly moved his chair to within inches of Cillo’s person, resulting in a face-to-face confrontation. He then began to sharply question Cilio regarding the serious sexual *358 accusations that had been made against him. This was the first indication of the real purpose of the interview. Given these facts, I must conclude that despite the detective’s numerous attempts to encourage Cilio to waive his right to counsel, Cilio never made a knowing and voluntary waiver of his right to an attorney, but rather acquiesced and responded to the accusations made against him.
I would therefore reverse the trial court’s denial of the motion to suppress.