ALTENBERND, Judge.
Michael Nieminski appeals his judgment and sentence for trafficking in cannabis in excess of twenty-five pounds. He pleaded no contest to this charge and reserved the right to challenge the denial of the disposi-tive motion to suppress evidence obtained after law enforcement officers executed a search warrant on a marijuana grow house. The critical issue in this case is whether, without a warrant, deputies may enter a suburban or rural acreage completely surrounded by a six-foot chain-link fence in order to conduct a knock and talk at the front door of a residence. The only entrance to the property was a driveway that had a closed, but unlocked, gate that could be readily opened. The property was not posted with “no trespassing” signs, and a horse and three friendly dogs were inside the fencing.
Although not specifically argued by Mr. Nieminski, we recognize that the two deputies who initially entered the property for a knock and talk might have been trespassing. Even if the entry onto the property could be characterized as a trespass, that possibility by itself would not be enough to constitute a violation of the Fourth Amendment justifying a remedy under the exclusionary rule. The deputies entered this property through the unlocked gate for the purposes of a knock and talk, which is a form of citizen’s encounter. Mr. Nieminski had the initial burden in this case to establish that he had a reasonable expectation of privacy that included an expectation that citizens would not enter the property through the unlocked gate to knock on his door for the ordinary purposes for which people knock on doors under similar circumstances. He failed to establish that his expectation of privacy at this property included protection for such a limited intrusion. Because the evidence gathered to support the search warrant arose from that brief intrusion into the curtilage, we affirm the judgment and sentence on appeal.
I. The Facts
In early May 2009, Mr. Nieminski and his girlfriend moved into a single-family, *523 three-bedroom house in Collier County. Although the address of the house was a street number on 56th Avenue Northeast in Naples, Florida, this “neighborhood” in Naples is actually a sparsely populated area with platted acreages. This particular property was approximately two or three acres. It included the house and a modest stable capable of housing a few horses. A standard, six-foot chain-link fence surrounded the property along its borders. The house was set back at least 100 feet, and only a driveway led to the house. There was no pedestrian gate in the fence. The gate for the driveway had once been operated electronically, but it is undisputed that the gate opened by hand in 2009. The property was not posted and did not have any other signs that might discourage a person from entering for the purpose of knocking on the front door.
Mr. Nieminski and his girlfriend were living in the house in order to tend a sizable marijuana crop that was being grown under lights in some of the rooms in the house. It is undisputed that Mr. Nie-minski was not only working in this house but also was eating and sleeping there.
In June 2009, the Collier County Sheriffs Office received an anonymous tip that marijuana was being cultivated at this house. Several deputies went to the house to check out the tip. When they arrived, they could see a pickup truck parked next to the house. They decided to perform a knock and talk if the gate to the property was unlocked. One of the deputies checked the gate and determined that it was not locked and that he could readily slide the gate open.
Two of the deputies entered the property through the gate. Inside the fence, they encountered Mr. Nieminski’s horse and his three dogs. The deputies then walked to the front porch of the house, which faced the road. They knocked on the front door, but no one answered. Standing at the front door, both officers smelled the odor of marijuana through a partially opened window on the front porch.
The two officers left to obtain a search warrant while the other officers remained behind at the roadside. The affidavit the officers prepared in support of a warrant included all of the important facts except for the existence of the fence and the unlocked gate.
A magistrate issued the search warrant, and the officers returned to the home that same afternoon. The search of the home revealed forty-one marijuana plants weighing approximately sixty-nine pounds, a grow room, and various machinery. The officers arrested Mr. Nieminski and his girlfriend on the property, and the State charged them with trafficking in cannabis in excess of twenty-five pounds.
Mr. Nieminski moved to suppress the evidence obtained during the search. The trial court, after conducting an evidentiary hearing, denied the motion in a written order. The trial court concluded that Mr. Nieminski could not challenge the search because he did not have a reasonable expectation of privacy at the house. The court reasoned that he was not an owner or tenant of the home and that the premises were being used as a commercial enterprise. Despite this determination that Mr. Nieminski could not challenge the search, the court continued its Fourth Amendment analysis and concluded that the smells the officers perceived from the front porch provided sufficient probable cause to issue the warrant. After the denial of the motion, Mr. Nieminski negotiated a plea in this case, reserving the right to appeal the denial of the dispositive motion to suppress.
We conclude that the trial court erred in determining that Mr. Nieminski could not *524 challenge the search because he did not have a reasonable expectation of privacy in the residence. Nevertheless, like the trial court, we conclude that officers seized the evidence pursuant to a valid search warrant. The fact that the officers developed the evidence essential for the issuance of the search warrant during an attempt to conduct a knock and talk, after walking through an unlocked gate to approach the front door, does not invalidate the warrant under these facts. Because the knock and talk was not itself an act that violated Mr. Nieminski’s reasonable expectation of privacy, it was not a violation of the Fourth Amendment. Accordingly, the omission of the facts about the fence and the gate in the affidavit does not invalidate the warrant or require the suppression of the evidence seized during the search pursuant to the warrant.
II. Mr. Nieminski had a reasonable expectation of privacy in the residence that allowed him to challenge the search warrant.
There was a time when the courts of Florida addressed Fourth Amendment issues involving searches of real property by determining whether the defendant had a right to raise the issue as a victimized “owner, lessee or tenant, or the lawful occupant of the premises searched.” Tribue v. State, 106 So.2d 680, 633 (Fla. 2d DCA 1958). The courts often described this as an issue of “standing,” and there is still a tendency to frame this threshold issue as such. State v. Washington, 884 So.2d 97, 98 (Fla. 2d DCA 2004).
Nevertheless, it is now well established that most Fourth Amendment issues are not addressed by any typical preliminary analysis of “standing.” Hicks v.State, 929 So.2d 13, 16 n. 3 (Fla. 2d DCA 2006).[1] Instead, before the trial court considers the merits of a Fourth Amendment motion to suppress, the defendant must first establish a factual basis justifying his or her claim to have possessed a Fourth Amendment right at the time of the alleged invasion. This analysis is actually the first part of the substantive legal analysis of a Fourth Amendment claim. As we explained in Hicks:
The United States Supreme Court has held that Fourth Amendment rights are personal and a defendant has the burden to establish that his own Fourth Amendment rights have been infringed. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see also Dean v. State, 478 So.2d 38, 40 (Fla.1985). Whether a defendant has a reasonable expectation of privacy is a threshold inquiry. Rakas, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. A search violates a defendant’s Fourth Amendment rights only if (1) a defendant demonstrates that he or she had an actual, subjective expectation of privacy in the property searched and (2) a defendant establishes that society would recognize that subjective expectation as objectively reasonable. Minnesota v. Olson, 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); Smith v. Maryland, 442 U.S. 735, 740-41, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).
Id. (footnotes and parallel citations omitted).
This two-fold analysis used to determine whether a person has the type of interest *525 protected by the Fourth Amendment emanates from Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and specifically from Justice Harlan’s concurring opinion. Scholars question whether the first subjective prong of this analysis is appropriate. 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 2.1(c) (4th ed. 2004). In Mr. Nieminski’s case, as will be seen, the critical privacy issues concern only the second prong of the analysis.
In this case, the trial court received evidence that Mr. Nieminski had not changed the address on his driver’s license to the address of the grow house. It also considered the fact that Mr. Nieminski provided another address as his residence when he was booked into the county jail. While this evidence might be relevant to determine residency or domicile, we are not convinced that it is more than marginally relevant in deciding the two-pronged threshold inquiry described above.
Under some circumstances, even an overnight guest can have the right to challenge a search. See generally Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Courts have held a short-term visitor engaged in drug operations to have no reasonable expectation of privacy. See, e.g., Minnesota v. Carter, 525 U.S. 83, 90-91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); see generally Washington, 884 So.2d 97 (discussing the Rakas test in the context of a short-term, casual guest). But Mr. Nieminski was hardly a short-term visitor.
The trial court was also convinced to rely on the theory that society would not recognize as objectively reasonable Mr. Nieminski’s subjective expectation of privacy because the marijuana grow house was a commercial venture. Admittedly, a commercial venture can create an environment in which persons have a reduced expectation of privacy. There are cases in which courts have held that persons engaged in drug-related activities have no reasonable expectation of privacy because the operation was a commercial venture. See Carter, 525 U.S. at 90-91, 119 S.Ct. 469. The State, however, has provided no authority for the proposition that a clandestine marijuana grow house, also functioning as a home, with a resident employee and no commercial invitees has such a reduced expectation of privacy.
It is undisputed that Mr. Nieminski, his girlfriend, his horse, and his three friendly dogs had been living at this grow house for approximately a month before the execution of the search warrant. Mr. Nieminski was not a trespasser on this property; he was both working and living full time at this location. We conclude that these undisputed facts, in addition to providing a solid foundation for a country-western song, are sufficient to satisfy Mr. Niemin-ski’s threshold burden under the Katz analysis: (1) he clearly demonstrated that he had an actual, subjective expectation of privacy in the property searched, and (2) given that the premises appeared from the exterior and to a large extent even from the interior to be a typical, quiet home on the boundaries between urban and rural living, he established that society would recognize that his subjective expectation was objectively reasonable. Accordingly, the trial court was required to address his motion to suppress on the merits to determine whether the search warrant was properly issued. Fortunately, the trial court did proceed in this case to address the merits of the motion.
III. The analysis in this case must narrowly focus on whether the entry onto the property for a knock and talk violated the Fourth Amendment.
This case is not the typical case in which a defendant argues that a law enforcement *526 officer omitted factual information from an affidavit in an effort to establish probable cause where none existed. See generally Pilieci v. State, 991 So.2d 883, 892-94 (Fla. 2d DCA 2008); see also State v. Rabb, 920 So.2d 1175, 1180-81 (Fla. 4th DCA 2006). Instead, Mr. Nieminski is arguing that the law enforcement officer should have revealed to the magistrate that he or she obtained the relevant information by a means that was itself a violation of the Fourth Amendment. As a result, in this context, we do not need to evaluate the sufficiency of the affidavit or the validity of the warrant if we first conclude that the entry onto the property and the knock and talk did not violate the Fourth Amendment. If the officers’ actions did not violate the Fourth Amendment, the officers did not need to include the circumstances relating to the fence and gate in the affidavit, and the evidence described in the affidavit was clearly sufficient to obtain the warrant.
We conclude that the entry onto the property and the knock and talk did not violate the Fourth Amendment. This step of our analysis returns us to the Katz test but this time to determine more narrowly whether Mr. Nieminski had a protected expectation of privacy as to persons approaching his front door.
IV. Mr. Nieminski did not establish that his reasonable expectation of privacy included the right to assume that ordinary citizens would not open his gate and knock on his front door occasionally.
The dispositive issue in this case is whether a law enforcement officer may open a closed, but unlocked, driveway gate on a rural or suburban acreage that is completely surrounded by a chain-link fence in order to walk to the front door of a house to engage in a knock and talk. At least in the absence of a “no trespassing” sign or similar warning that the fence and gate are intended to keep people out rather than to keep animals in, we conclude that the officer may enter the curtilage for this limited purpose.
It is worth emphasizing that the burden of proof on this issue fell upon Mr. Nie-minski. In most Fourth Amendment cases, the burden of proof is on the State if the search is warrantless, Hilton v. State, 961 So.2d 284, 296 (Fla.2007), and upon the defendant if the search was pursuant to a warrant, State v. Bell, 417 So.2d 822, 823 (Fla. 4th DCA 1982). This case, however, involves the threshold question of whether Mr. Nieminski had a protectable expectation of privacy for purposes of the Fourth Amendment. The burden of proof and persuasion on this threshold issue is generally placed upon the defendant by courts that have addressed this issue. State v. Rewolinski, 159 Wis.2d 1, 464 N.W.2d 401, 406 (1990); see also United States v. Cavely, 318 F.3d 987 (10th Cir.2003); United States v. French, 291 F.3d 945 (7th Cir.2002).
In this ease, the officers employed legitimate investigative methods that did not constitute a search. Some police investigative tools, while very effective at gathering evidence useful in developing probable cause, are not deemed to be searches. For example, an officer may rummage through your trash can at the curb and take its contents without conducting a search or seizure. See California v. Greenwood, 486 U.S. 35, 39-40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); State v. Slatko, 432 So.2d 635, 635 (Fla. 3d DCA 1983); State v. Schultz, 388 So.2d 1326, 1329 (Fla. 4th DCA 1980). Most relevant to this case, a citizen’s encounter, including a knock and talk, is not regarded as a search or seizure. See State v. Navarro, 19 So.3d 370, 372-73 (Fla. 2d DCA 2009); Luna-Martinez v. State, 984 So.2d 592, *527 598 (Fla. 2d DCA 2008); State v. Triana, 979 So.2d 1039, 1043 (Fla. 3d DCA 2008). As we explained in Hardin v. State, 18 So.3d 1246, 1247 (Fla. 2d DCA 2009): “A ‘knock and talk’ is a purely consensual encounter, which officers may initiate without any objective level of suspicion.” (Citations omitted.)
In Lunar-Martinez, we further explained:
“A ‘knock and talk’ ” encounter “is a procedure [ordinarily] used by police officers to investigate a complaint where there is no probable cause for a search warrant.” Murphy v. State, 898 So.2d 1031, 1032 n. 4 (Fla. 5th DCA 2005). In employing this procedure, “police officers knock on the door, try to make contact with persons inside, and talk to them about the subject of the complaints” underlying the investigation. Id. Such a consensual encounter may lead to a request by the police for voluntary consent to conduct a search. “Courts generally have upheld [the knock-and-talk] investigative procedure as a legitimate effort to obtain a suspect’s consent to search.” United States v. Chambers, 395 F.3d 563, 567 n. 2 (6th Cir.2005). The key to the legitimacy of the knock-and-talk technique — as well as any other technique employed to obtain consent to search — is the absence of coercive police conduct, including any express or implied assertion of authority to enter or authority to search. In properly initiating a knock-and-talk encounter, the police should not “deploy overbearing tactics that essentially force the individual out of the home.” United States v. Thomas, 430 F.3d 274, 277 (6th Cir.2005). Nor should “overbearing tactics” be employed in gaining entry to a dwelling or in obtaining consent to search.
984 So.2d at 598-99.
When a court holds that such an investigative method is not a search, in essence, the court is stating that such conduct is either so minimally intrusive in the eyes of the general public or that the conduct is committed with such frequency by members of the public other than police officers that no one in society has a reasonable expectation of privacy that protects them from the challenged conduct. These judicial rulings arguably are bright-line rulings in a field of law that normally eschews bright lines.
In this case, if the address in Naples, Florida, had been a more traditional lot in a residential neighborhood surrounded by a white picket fence and a gate that closed but did not lock, no one would reasonably suggest that the knock and talk was improper or that officers were required to describe the picket fence in the affidavit used to obtain the warrant. On the other hand, if the fence in this case was solid and had barbed wire at the top, a large combination lock on the gate, a “no trespassing” sign, a telephone number to call for entrance, and three bad dogs, no one would reasonably suggest that the police had the authority to climb over the fence to conduct a knock and talk. See, e.g., United States v. Hambelton, No. 1:08cr26-SPM, 2009 WL 722284 (N.D.Fla. Mar.18, 2009). In other words, there are cases in which an established bright-line rule generally authorizing police conduct begins to fade, and we engage in the more traditional case-specific analysis of all the circumstances to determine whether specific police conduct is a search despite the general bright line established by the case law. The knock and talk in this case seems to fall into that category. That is why we have chosen to return to the Katz test to determine more narrowly whether Mr. Nieminski had a protected expectation of privacy as to persons approaching his front door where such conduct constitutes a *528 statutory trespass. We have found no Florida case expressly addressing this issue.
Undoubtedly, the most troublesome fact in this case is the fact that the deputies’ entry onto the property arguably may have been a violation of section 810.09, Florida Statutes (2008). The officers willfully entered the property without being expressly authorized, licensed, or invited to enter. Although no one on the property communicated to them that they could not enter, and the property was not posted with signs, the property was “fenced land” and is considered enclosed and posted. See §§ 810.09(l)(a)(l), 810.011(7), (8). It is not necessary in Florida to post enclosed land in order to obtain the benefit of section 810.09 if the property includes a dwelling house and does not exceed five acres in size. § 810.011(5)(b). A violation of the statute is more than civil trespass; technically, it is a misdemeanor — albeit one that is rarely prosecuted. See § 810.09(2)(a). Accordingly, if the actions here constituted a statutory trespass and if such a statutory violation automatically results in a violation of the Fourth Amendment, this knock and talk violated the Fourth Amendment, and the evidence that was the fruit of this entry could not be used to obtain the search warrant.
Although common law or statutory trespass and the Fourth Amendment involve interrelated legal concepts, it is well established that an officer’s trespass does not necessarily amount to a violation of the Fourth Amendment. See, e.g., United States v. Dunn, 480 U.S. 294, 304-05, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (holding government agents’ trespass did not violate the Fourth Amendment where they crossed over defendant’s perimeter fence and interior fences to observe defendant’s barn); Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (holding officers’ criminal trespass on defendant’s fenced and posted land did not violate the Fourth Amendment); Sarantopoulos v. State, 629 So.2d 121, 123 (Fla.1993) (holding officer’s civil trespass on neighbor’s land in order to observe defendant’s backyard did not constitute a Fourth Amendment violation). Even if the actions of the officers in this case could be deemed a trespass, that fact alone is insufficient to transform the officers’ conduct into a violation of the Fourth Amendment. A government intrusion that constitutes a trespass becomes a Fourth Amendment violation only when it “infringes upon the personal and societal values protected by the Fourth Amendment.” Oliver, 466 U.S. at 182-83, 104 S.Ct. 1735. “The existence of a property right is but one element in determining whether expectations of privacy are legitimate.” Id. at 183, 104 S.Ct. 1735. The hallmark of the analysis is whether a person enjoyed a “ ‘constitutionally protected reasonable expectation of privacy ” in the intruded area. Id. at 177, 104 S.Ct. 1735 (quoting Katz, 389 U.S. at 360, 88 S.Ct. 507) (Harlan, J., concurring).
Hence, it was Mr. Nieminski’s initial burden to establish that he had a reasonable expectation that ordinary citizens would not occasionally enter his property by opening the gate and walking up the driveway to the front door to communicate with the occupant for all of the many reasons that people knock on front doors. However, Mr. Nieminski provided no evidence that other people had not opened the gate and walked to his front door during the period that he had lived in the home. Indeed, the evidence did not establish that persons approaching the property would or should know that they were not welcome to enter through the unlocked gate in order to approach the front door to deliver something or to make contact with *529 the occupants of the home. It is quite apparent from the deputies’ testimony that they did not perceive that it might be a trespass for them to walk to the house if the gate was unlocked. In this case, an ordinary person might have concluded that the gate was closed, but unlocked, to keep animals in the enclosure and not to keep people "out. Had there been other indicia that entry onto the property was unwelcome, our conclusion might be different.
The Eleventh Circuit has had occasion to address a somewhat similar circumstance arising in a rural setting. See United States v. Taylor, 458 F.3d 1201 (11th Cir.2006). In that case, an officer was sent in the night to a home from which a 911 call had been made, but the person calling 911 had hung up. Id. at 1203. The property was fully fenced and the officer drove onto the property through an unlocked gate. The officer was not there intending to perform a search but rather to check on the safety of the occupants. Id. The Eleventh Circuit held that the knock and talk did not violate the Fourth Amendment. Id. at 1204-05.
In Hambelton, 2009 WL 722284, at *1, the court considered a case similar to this case involving a marijuana grow operation. In that case, the court held the entry onto the property by the officers was illegal and the warrant invalid. Id. at *7. In Hambelton, however, the gate was locked with two padlocks and had two warning signs explaining that the property was guarded by dogs. Id. at *1.
The photographs and video in this court’s record could be better, but they establish that the building on this property is an ordinary home. Even if the mail is delivered to a roadside mailbox, it is clear that an occupant of this house should reasonably expect an occasional deliveryman, salesperson, other solicitor, or neighbor to approach the front door through the unlocked gate. This is particularly true when nothing in the record suggests that contact with the occupants could readily be made in any other manner, such as through a call box at the gate or a sign with a phone number on it. Accordingly, we hold that Mr. Nieminski failed to establish that his reasonable expectation of privacy in this house included an expectation that persons would not occasionally enter through the gate and approach the front door to talk to him. Since the deputies discovered the critical evidence while engaged in such conduct, we conclude that the deputies did not violate the Fourth Amendment, and the trial court properly denied the motion to suppress the evidence obtained during the subsequent search.
Affirmed.
SILBERMAN and BLACK, JJ., Concur.

. A full discussion of "standing” in this context is beyond the scope of this opinion. There are cases in which the initial issue is whether the person making a Fourth Amendment claim has standing to raise it. See 6 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 11.3 (4th ed. 2004). In this case, however, the "standing” issue and the substantive issue, both of which require analysis of Mr. Nieminski’s reasonable expectation of privacy, are essentially the same.