PALMER, J.
David Bainter (defendant) appeals his judgment and sentence which were entered by the trial court after he pled nolo contendere to the charge of manufacturing cannabis. Determining that his motion to suppress should have been granted, we reverse.
The defendant was charged with committing the offense of manufacturing cannabis. He filed a pre-trial motion seeking to suppress cannabis seized from his home based on the claim that the seizure was the result of an illegal, warrantless search. After conducting a hearing, the trial court entered a written order denying the suppression motion. The defendant then entered a plea of nolo contendere as charged, after reserving the right to appeal the trial court’s dispositive suppression ruling. See Fla. R. App. P. 9.140.
The defendant maintains that the trial court reversibly erred in denying his suppression motion. We agree.
A trial court’s rulings on a motion to suppress come to [the appellate] court with a presumption of correctness. State v. Ernst, 809 So.2d 52, 54 (Fla. 5th DCA 2002). Accordingly, the evidence and all reasonable inferences “must be interpreted in a manner most favorable to an affirmance.” Id. If the trial court’s findings of fact are supported by competent, substantial evidence, this court must accept them. See, e.g., Weiss v. State, 965 So.2d 842, 843 (Fla. 4th DCA 2007). By contrast, we review questions of law involved in any suppression analysis de novo. Ernst, 809 So.2d at 54.
State v. Nowak, 1 So.3d 215, 217 (Fla. 5th DCA 2008).
The undisputed facts are that the property where the search and seizure took place was the defendant’s home. The home was located on a large piece of property that had a few acres that were cleared. The property was surrounded by a barbed-wire fence, had a chain-link push gate at the entry to the dirt driveway, and had “no trespassing” signs posted at the entry to the driveway. The police traveled to the defendant’s address to do a knock and talk[1] after receiving an anonymous tip that the property owner might be growing cannabis. The police drove down the dirt driveway through the open gate, parked the car near the home, exited the ear, *519 walked about forty yards to the front porch, and knocked on the front door. The knock and talk resulted in the eventual seizure of cannabis. The police admitted that they did not have consent to enter the property and they did not have a warrant. They also did not see anything in plain view that was illegal.
William Hamilton testified that he owns the property where the search took place. A six-foot-high chain-link gate blocks the entrance to the driveway and a barbed-wire fence surrounds the property. The mailbox is located twelve feet outside of the gate. Several “no trespassing” signs are posted on a pole beside the place where the gate shuts. Hamilton testified that he does not generally have members of the public come onto his property, and no salesmen or solicitors had ever entered his property. He shuts the gate when there is no one home, but when there is someone home, the gate is open most of the time. He said that, when friends come over, the gate is open, if he knows that they are coming. UPS packages are usually delivered by leaving them at the gate post, even when the gate is open. However, if a signature is required for delivery, the delivery service drives to the house. He testified that if a postal worker has a package, the worker comes on the property and honks the horn to get someone’s attention.
The defendant then testified. He stated that he has lived on the property off and on for ten years. He corroborated the fact that the property is completely surrounded by barbed-wire fencing and that there is a gate at the entrance to the driveway. Also, there are “no trespassing” signs on a post at the entry to the driveway. He said that they “very, very seldom” receive visitors at the house and they never receive solicitors. He stated that the power company employees must enter the property to read the meter.
The defendant sought suppression, arguing that the police officers’ entry into the property was illegal. The trial court rejected this argument, reasoning:
Everybody testified here today, the police officers, the defendant, and his witness, Mr. Hamilton, all testified that at the time the gate was clearly open, and for the sake of my ruling I’m going to assume that those posted signs were there, even though the officers testified they did not remember seeing the posted signs. ... So I do rule in favor of the state, deny the motion to suppress with that open gate. I think the officers did have the right to drive up there, regardless if they walked, drove, drove within 25 feet, 50 to 75 feet or 30 yards away or walked up, they had the right to be there, the defendant’s motion to suppress is denied.
We disagree.
In Randall v. State, 458 So.2d 822 (Fla. 2d DCA 1984), the Second District explained:
The fourth amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” As the United States Supreme Court held in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), a “search” occurs within the meaning of the fourth amendment when government action invades an individual’s justifiable or reasonable expectation of privacy. Katz, 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583. See Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Under Katz and its progeny, a reasonable expectation of privacy exists if the individual has exhibited an actual, subjective expectation of privacy which society is prepared to recognize as reasonable. See Smith, 442 U.S. at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226.
*520 Id. at 824. The Third District, citing our court, recently held that a defendant had established his subjective expectation of privacy in the curtilage of his home, explaining:
“Putting up fences, and affirmatively taking express steps to exclude the public or other persons from using the area, seeing into it, or gaining access to the area ... are ways to establish such a subjective manifestation.” Ratcliff v. State, 783 So.2d 1099, 1101 (Fla. 5th DCA 2001); Ruiz v. State, 743 So.2d 581 (Fla. 4th DCA 1999).
Fernandez v. State, 63 So.3d 881, 883 (Fla.3d DCA 2011). Thus, the issue for determination here is whether the defendant exhibited an actual, subjective expectation of privacy that society is prepared to recognize as reasonable. We hold that he did.
Two recent cases are instructive. In Powell v. State, 120 So.3d 577 (Fla. 1st DCA 2013), the issue was “whether police officers entering the property of Russell Powell and Benjamin Wilbourn and peering into a window of their mobile home late at night after receiving an anonymous tip an hour earlier that marijuana plants were inside was a search that violated the Fourth Amendment.” Id. at 580. The Powell defendants argued that the officers’ viewing of the marijuana plants by standing at and looking through the front window of their home constituted an illegal search. The First District agreed. In the opinion, the court set forth a summary of the law applicable to constitutional limitations placed on police conduct at a person’s home and addressed the circumstances surrounding knock and talks:
The existence and extent of a license that would permit a “knock and talk” depends on the circumstances; homeowners who post “No Trespassing” or “No Soliciting” signs effectively negate a license to enter the posted property. See § 810.09, Fla. Stat. (Florida’s trespass statute).
Id. at 584. In Nieminski v. State, 60 So.3d 521 (Fla. 2d DCA 2011), the issue was whether deputies could enter acreage completely surrounded by a six-foot chain-link fence in order to conduct a knock and talk. There, the driveway had a closed, but unlocked, gate and there were no signs posted. Two deputies entered the property through the gate so that they could conduct the knock and talk. The Second District explained that the defendant had the initial burden to establish that he had a reasonable expectation that ordinary citizens would not occasionally enter the property through the closed but unlocked gate to knock on his front door. Id. at 529. The court held that the defendant failed to sustain his burden of proof because the “property was not posted and did not have any other signs that might discourage a person from entering for the purpose of knocking on the front door.” Id. at 522.
Here, the posting of the signs and the fencing of the entire property, including a push gate at the entrance to the driveway, exhibited the defendant’s actual, subjective expectation of privacy, and we conclude that society is prepared to recognize same as being reasonable. Neither the fact that the gate was open, nor that occasional friends or service providers come onto the property, negate that expectation of privacy-
Accordingly, we reverse the order denying the defendant’s suppression motion and remand with directions to discharge the defendant.
REVERSED and REMANDED.
GRIFFIN and COHEN, JJ., concur.

. A knock and talk is justified as a consensual encounter during which officers are authorized to "approach a dwelling on a defined path, knock on the front door, briefly await an answer, and either engage in a consensual encounter with the resident or immediately depart." Powell v. State, 120 So.3d 577 (Fla. 1st DCA 2013).