NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                    )
                                     )
          Appellant,                 )
                                     )
v.                                   )      Case No. 2D17-4922
                                     )
GREGORY EDWARD GUANSO                )
MILLER,                              )
                                     )
          Appellee.                  )
_____)

Opinion filed October 16, 2019.

Appeal from the Circuit Court for
Sarasota County; Debra Johnes Riva,
Judge.

Ashley Moody, Attorney General,
Tallahassee, and Linsey Sims-
Bohnenstiehl, Assistant Attorney
General, Tampa, for Appellant.

Howard L. Dimmig, II, Public Defender,
and Cynthia J. Dodge, Assistant Public
Defender, Bartow, for Appellee.


ROTHSTEIN-YOUAKIM, Judge.

          The State appeals from the trial court's nonfinal order suppressing, in the

State's burglary and grand-theft prosecution of Gregory Edward Guanso Miller,

evidence concerning a briefcase full of money.[1]  Because Miller voluntarily disclaimed

any interest in the briefcase, which deputies readily observed while lawfully in his motel

room, we reverse the court's suppression order.

On June 11, 2016, sheriff's deputies in Adams County, Colorado, received

information that Miller, who was wanted in Florida on an outstanding warrant arising out

of a burglary and grand theft in Sarasota on May 18, 2016, was staying in a local motel

room.[2]  The deputies were further told that Miller may have a large amount of money in

some sort of briefcase.

---

[1]We have jurisdiction.  See Fla. R. App. P. 9.140(c)(1)(B) (providing that the state may appeal an order "suppressing before trial confessions, admissions, or evidence obtained by search and seizure").

[2]Because the challenged police conduct occurred in Colorado, the State argued below and, to a lesser extent, argues on appeal that Colorado law should govern the lawfulness of that conduct.  The question of which state's law to choose when evidence is obtained in a state other than the prosecuting forum is one that has generated a great deal of debate, with compelling arguments on both sides.  See, e.g., Megan McGlynn, Note, Competing Exclusionary Rules in Multistate Investigations: Resolving Conflicts of State Search-and-Seizure Law, 127 Yale L.J. 406 (2017); Mary Jane Morrison, Choice of Law for Unlawful Searches, 41 Okla. L. Rev. 579 (1988).
We have found no hard-and-fast rule under Florida law.  See, e.g., Echols v. State, 484 So. 2d 568, 571 (Fla. 1985) ("We agree that Florida's interest in prosecuting the case is greater than that of Indiana and that it would be appropriate to apply Florida law if we found that Florida's interests were served thereby.  However, we do not agree that Florida's interests are served by excluding relevant evidence which was lawfully obtained in Indiana in conformity with the United States Constitution and Indiana law." (citing McClellan v. State, 359 So. 2d 869, 873 (Fla. 1st DCA 1978) ("[W]e hold that evidence procured in a sister state pursuant to a search valid under the laws of that state is admissible in the trial of a criminal case in Florida notwithstanding that the warrant validly issued and executed in the sister state would not have been or was not valid under the laws of Florida; provided the warrant and its execution in the sister state does not offend U.S. Constitutional standards.")))  Regardless, we need not weigh in on that debate now because even under the Florida law that Miller advocated and the trial court applied, suppression was unwarranted.

After confirming the information, deputies Heath Gumm and Daniel Hill went to the motel room, which was on the second floor of the motel, and knocked on the door. Jennifer Jehle answered it. She told the deputies that Miller and another man, Michael Barnes, were in the room with her but that Miller was in the bathroom. Jehle and Barnes stepped outside of the motel room to speak with Deputy Gumm while Deputy Hill stood at the doorway of the room and repeatedly called for Miller to come out of the bathroom. A few minutes later, Miller came out and confirmed his identity, and Deputy Hill took him into custody.[3]

An employee from motel management told the deputies that the room's occupants were no longer welcome on the property, and Jehle and Barnes began gathering their belongings so they could leave. Deputy Gumm waited at the room while Deputy Hill took Miller downstairs and secured him in a patrol car. Deputy Hill asked Miller if he had any personal belongings in the room; Miller said that he did and asked Deputy Hill to retrieve his jewelry. Deputy Hill then returned to the room, and he and Deputy Gumm went inside.

The deputies noticed a long silver briefcase behind the television stand and asked Jehle and Barnes if it belonged to either of them. They both said no, and Jehle insinuated that it might belong to Miller. The deputies collected the unopened briefcase—along with some jewelry and a couple of pairs of shoes—and took it down to the patrol car. They asked Miller if it belonged to him, and Miller also said no. Only then did the deputies open the case. It was full of money.

---

[3]Miller does not challenge the validity of the arrest warrant.

Miller moved to suppress the briefcase, arguing, among other things, that he had had a reasonable expectation of privacy in the motel room and that the deputies should have obtained a search warrant before seizing and opening the briefcase because none of the exceptions to the warrant requirement applied. The State responded that, among other things, Miller lacked standing to contest the search of the briefcase because he had explicitly denied that it belonged to him.

In granting Miller's motion, the trial court concluded that, among other things, Miller had had a reasonable expectation of privacy in the motel room and that "absent proof that specific legal exceptions existed, law enforcement was unable to conduct a warrantless search of the premises at that time." The court then went on to analyze and reject the applicability of various exceptions to the warrant requirement, ultimately concluding that the "briefcase and its contents, obtained by law enforcement as a result of the search of the Defendant's hotel room, must be suppressed." We review the court's legal conclusions de novo. State v. Roman, 103 So. 3d 922, 924 (Fla. 2d DCA 2012) ("[I]n reviewing a trial court's ruling on a motion to suppress, this court must give deference to the trial court's factual findings if those findings are supported by competent, substantial evidence, but this court must review the trial court's ruling of law de novo." (citing Jardines v. State, 73 So. 3d 34, 54 (Fla. 2011))).

The State does not challenge the trial court's conclusion that Miller had a reasonable expectation of privacy in the motel room and, therefore, had "standing" to

challenge a warrantless search of the motel room by the deputies.[4]  See Stoner v.

California, 376 U.S. 483, 490 (1964) ("No less than a tenant of a house, or the occupant

of a room in a boarding house, a guest in a hotel room is entitled to constitutional

protection against unreasonable searches and seizures." (first citing McDonald v. United

States, 335 U.S. 451 (1948); then citing Johnson v. United States, 333 U.S. 10 (1948))).

But therein lies the rub:  the deputies did not conduct a warrantless search of the motel

room.  Miller conceded that the deputies were lawfully in the motel room to retrieve

some of his personal items, and the trial court found that both deputies "could see the

briefcase from a place where they had the lawful right to be."  They did not peer into

closets or rifle through drawers; they simply observed the briefcase in plain sight and

asked Jehle and Barnes if it belonged to either of them.[5]  No Fourth Amendment

---

[4]As this court has recognized:
[I]t is now well established that most Fourth Amendment
issues are not addressed by any typical preliminary analysis
of "standing."  Instead, before the trial court considers the
merits of a Fourth Amendment motion to suppress, the
defendant must first establish a factual basis justifying his or
her claim to have possessed a Fourth Amendment right at
the time of the alleged invasion.  This analysis is actually the
first part of the substantive legal analysis of a Fourth
Amendment claim.
Nieminski v. State, 60 So. 3d 521, 524 (Fla. 2d DCA 2011) (footnote omitted) (citing
Hicks v. State, 929 So. 2d 13, 16 n.3 (Fla. 2d DCA 2006)).  In this case as in Nieminski,
however, "the 'standing' issue and the substantive issue, both of which require analysis
of [the defendant's] reasonable expectation of privacy, are essentially the same."  Id. at
524 n.1.

[5]Although the briefcase was in plain sight, we agree with the trial court's
conclusion that the "plain view" exception to the warrant requirement would have been
inapplicable here because the incriminating nature of the briefcase was not immediately
apparent.  See Young v. State, 207 So. 3d 267, 269 (Fla. 2d DCA 2016) (explaining that
plain view doctrine can apply only if, among other things, "the incriminating nature of the
evidence is immediately apparent" (citing State v. Walker, 729 So. 2d 463, 464 (Fla. 2d
DCA 1999))).

concerns were implicated. No search or seizure of any kind, of either the premises or the briefcase, had taken place. Had Miller been, say, handcuffed to the railing outside the motel room, they could have shouted the same inquiry out the doorway to him, to the same effect.

Because Miller was secured in the patrol car, however, the deputies took the unopened briefcase downstairs to ask whether it belonged to him. Upon being presented with the unopened briefcase, Miller unequivocally disclaimed ownership of it. Having done so, he relinquished any reasonable expectation of privacy in its contents, see State v. Fosmire, 135 So. 3d 1153, 1156 (Fla. 1st DCA 2014) ("A defendant who voluntarily abandons property or disclaims ownership lacks standing to challenge its search and seizure." (citing Mori v. State, 662 So. 2d 431, 431 (Fla. 3d DCA 1995))), and any Fourth Amendment inquiry (with respect to Miller, at least) ends there, see Nieminski, 60 So. 3d at 524 ("[B]efore the trial court considers the merits of a Fourth Amendment motion to suppress, the defendant must first establish a factual basis justifying his or her claim to have possessed a Fourth Amendment right at the time of the alleged invasion.").

Miller contends that at the moment the deputies took hold of the briefcase to bring it downstairs, an unlawful seizure occurred, rendering his disclaimer of ownership involuntary. See State v. Williams, 751 So. 2d 170, 171 (Fla. 2d DCA 2000) ("[W]here a defendant abandons property as a direct result of unlawful police conduct, he does not relinquish his reasonable expectation of privacy in his property, and retains standing to challenge the introduction of the abandoned items into evidence." (citing United States v. Gilman, 684 F. 2d 616, 619-20 (9th Cir. 1982))); State v. Daniels, 576

- 6 -

So. 2d 819, 823 (Fla. 4th DCA 1991) ("[A]n unconstitutional seizure or arrest which prompts a disclaimer of property vitiates the disclaimer." (citing United States v. Tolbert, 692 F. 2d 1041, 1045 (6th Cir. 1982))).  But a "seizure" in the Fourth Amendment context "occurs when there is some meaningful interference with an individual's possessory interests in that property."  Lindo v. State, 983 So. 2d 672, 675 (Fla. 4th DCA 2008) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).  The deputies' act of bringing the unopened briefcase to Miller, who had been secured in the patrol car pursuant to a valid arrest warrant, for the sole and explicit purpose of asking whether it belonged to him, was the antithesis of a Fourth Amendment seizure.[6]

Because Miller voluntarily disclaimed ownership of the briefcase that the deputies readily observed while lawfully in the motel room, he abandoned any reasonable expectation of privacy in the briefcase and, therefore, lacked "standing" to seek its suppression.  Accordingly, we reverse the trial court's order granting his motion and remand for further proceedings.

SILBERMAN and SALARIO, JJ., Concur.

---

[6]Of course, if Miller had responded that the briefcase did belong to him and the deputies had done anything other than relinquish it to him, that might be a different story.  But he didn't, so it isn't.