701 So.2d 441 (1997)
Michael CONNER, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1003.
District Court of Appeal of Florida, Fourth District.
November 19, 1997.
Philip G. Butler, Jr., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Barbra Amron Weisberg, and Elaine L. Thompson, Assistant Attorneys General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING AND REQUEST FOR CERTIFICATION
GROSS, Judge.
We deny appellant's motion for rehearing and request for certification, but sua sponte withdraw our previous opinion and substitute the following to clarify certain facts.
On February 10, 1995, Martin County Sheriff's deputies conducted a search of a commercial fish farm pursuant to a warrant. During the search, appellant Michael Conner drove onto the property in a dark-colored Trans Am. The deputies detained Conner and patted him down for weapons. One deputy saw the top of a rolled-up plastic bag protruding from Conner's pants pocket. The deputy seized the bag and observed a small amount of marijuana. Conner was arrested and a further search revealed another baggie of marijuana in his waistband. The officers transported Conner to the sheriff's office.
After completing the search at the fish farm, the deputies went to a residence to execute a second search warrant. There, the deputies seized a quantity of marijuana and arrested the male occupant. The man told the officers that he had just gotten the marijuana from Conner, who drove a dark-colored Trans Am or Camaro. The man told the deputies the location of Conner's home, where he had picked up the marijuana. He said that he had seen a firearm, money and several pounds of marijuana for distribution *442 in a safe at Conner's home and described the location of the safe. At the time the officers obtained this information, Conner was already in custody at the Martin County jail.
The deputies then went to Conner's home. Encountering Conner's wife, the deputies told her that her husband was in custody and that they had information that drugs were in the home. They requested her permission to search the home. Mrs. Conner consented to the officers' entry into the residence but not to any search of it. The deputies entered the residence, conducted a protective sweep for weapons and secured the location in anticipation for the preparation of a search warrant. A lieutenant on the scene ordered a detective to get a description of the dwelling to begin the process of obtaining a search warrant.
While waiting for the warrant, one of the deputies engaged Conner's wife in conversation at the kitchen table. She said that she did not know what was in the safe and did not know the combination to it. A deputy called Conner at the jail. Conner said that he had the combination to the safe and that his wife did not. He indicated that if he were allowed to speak with his wife, he would advise her to agree to the search. After Mrs. Conner spoke with her husband, she signed a form consenting to the search of the safe. In the safe, the deputies found large amounts of marijuana, cash and a handgun.
The state charged Conner with possession of marijuana with the intent to sell and possession of paraphernalia. Conner filed a motion to suppress pursuant to Florida Rule of Criminal Procedure 3.190(h). After a hearing, the trial court entered an extensive, thoughtful order. The judge found that the initial arrest of Conner violated the Fourth Amendment and he suppressed the items seized as a result of the arrest at the fish farm. The court concluded that Mrs. Conner "did grant the officers permission to enter but" not to search the residence. The court found that Mrs. Conner's consent to opening the safe was invalid, in light of the illegal arrest of her husband and statements the officers made to him while he was in custody. However, the court did not suppress the contents of the safe, holding under State v. Ruiz, 502 So.2d 87 (Fla. 4th DCA 1987), that the prosecution had established by the preponderance of the evidence that those items would inevitably have been discovered.
Conner pled no contest to the offenses contained in the information, reserving his right to appeal the order denying the motion to suppress.
Conner first argues that the officers' remaining in the home to secure it constituted a seizure of everything in the home, including the contents of the safe, in violation of the Fourth Amendment, because no warrant had been issued. To support his position, Conner relies on State v. Riley, 462 So.2d 800 (Fla.1984). There the supreme court held that there was no constitutional violation when the police entered and secured premises designated in a search warrant, where the warrant had issued but was not physically available at the premises for execution. Although Riley did not address the situation where the police secure premises prior to the issuance of a search warrant, that circumstance is controlled by Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).
In Segura, government drug agents conducted a surveillance on Segura and Colon. Based on probable cause, the agents arrested both individuals between 11 and 12 p.m. The officers conducted a limited security check of the defendants' apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence. Because the arrest occurred at night, the officers knew that a search warrant could not have been obtained until the following day. Two agents remained in the apartment awaiting the issuance of a warrant. The warrant was not issued until after 5 p.m. the next day and the search was performed at approximately 6 p.m., "some 19 hours after the agents' initial entry into the apartment." Id. at 801, 104 S.Ct. at 3383. Among other things, the search uncovered almost three pounds of cocaine, records of narcotics transactions, and over $50,000 in cash.
The supreme court rejected the argument that the officers' entry into the apartment and their subsequent securing of it constituted an unreasonable, and therefore illegal, *443 seizure of the apartment and all its contents, including the drugs, records, and cash.
As we have noted ... a seizure affects only possessory interests, not privacy interests. Therefore, the heightened protection we accord privacy interests is simply not implicated where a seizure of premises, not a search, is at issue. We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.
Id. at 810, 104 S.Ct. at 3388.
Based on Segura, the officers' securing of the residence in this case while seeking a warrant did not amount to an unreasonable seizure of the contents of the safe.
We also find that the trial court correctly applied the inevitable discovery doctrine. The officers had sufficient probable cause to obtain a warrant to search the safe based on information obtained from the individual arrested during the execution of the second warrant. After their consensual entry into the Conners' home, the officers had verified that the house had a safe. The deputies were in the process of obtaining a warrant to open and search the safe. The state carried its burden of establishing by a preponderance of the evidence that the contents of the safe would have inevitably been discovered in the course of a legitimate investigation, had the warrant process not been aborted by the constitutionally deficient consent secured from the Conners. See Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Ruiz, 502 So.2d at 87; State v. Duggins, 691 So.2d 566 (Fla. 2d DCA 1997); State v. Walton, 565 So.2d 381 (Fla. 5th DCA 1990).
AFFIRMED.
WARNER and POLEN, JJ., concur.