ROTHENBERG, J.
(concurring in part, and dissenting in part).
I agree entirely with the analysis and conclusion in lower tribunal case number 05-37152. As to case number 07-10526(A), the majority concludes that although the warrantless entry into the defendant’s home was unlawful, the evidence ultimately seized pursuant to a valid search warrant was admissible based on the independent source and/or inevitable discovery doctrines. While I agree with most of the majority’s analysis and its conclusion that, under the independent source and/or inevitable discovery doctrines, the evidence was admissible, I disagree with the finding that the entry of the defendant’s home was unlawful, and therefore respectfully dissent from that portion of the Court’s opinion.

Case No. 07-10526(A)

The majority concludes that the trial court erred in suppressing the evidence because sufficient probable cause existed to support issuance of the search warrant, and therefore, the evidence would have “inevitably been discovered.” I agree. However, I would also find that the war-rantless entry into the defendant’s residence and the subsequent protective sweep of his house were lawful because the record reflects that, prior to the warrantless entry, law enforcement had probable cause to believe that contraband or evidence of a crime would be found in the house and that exigent circumstances existed. Based on probable cause and exigent circumstances, a protective search was conducted, the occupants and the house were secured, and as the majority concedes, a search warrant was eventually obtained. Thus, the evidence that was subsequently seized was lawfully seized pursuant to a valid search warrant.

The Evidence

The record reflects that the defendant has an extensive criminal history. He is a known marijuana grower who, prior to his arrest in this case, had been arrested by Detective Orenstein for cultivating marijuana inside a house located at another location in Miami, Florida. The facts underlying that arrest are contained in the majority opinion under case number OS-37152. The defendant pled guilty to the charges in that case, and he was placed on probation.[9]
On March 13, 2007, while the defendant was on probation in case number 05-37152, the Miami-Dade Police Department received a call from the defendant’s landlord, at 9187 S.W. 138th Place, reporting that the defendant’s apartment contained a marijuana hydroponics lab. Detective Knapp responded to the call, and, after obtaining consent from the landlord, Detective Knapp searched the apartment and *67 confirmed that it was in fact being used as a marijuana grow house. After ten days, when Detective Knapp was unable to locate the defendant to arrest him on probable cause, he decided to obtain an arrest warrant. However, on March 28, 2007, the day he intended to obtain the warrant, Detective Knapp received a call from Detective Orenstein stating that he had located the defendant. After Detective Oren-stein’s call, Detective Knapp responded to where Detective Orenstein had the defendant secured and arrested the defendant based on probable cause that the defendant was growing marijuana. The search and seizure relating to Detective Knapp’s case is not an issue in this appeal.
The arrest of the defendant in case number 07-10526(A) occurred after the following. As discussed, Detective Orenstein knew the defendant because he had previously arrested the defendant for operating a marijuana grow house in case number 05-37152. Thus, when Detective Oren-stein learned that Detective Knapp was trying to locate the defendant in reference to the marijuana cultivation operation in the apartment, Detective Orenstein drove by a house where he believed the defendant could be located — 10195 S.W. 139th Place. When Detective Orenstein saw the defendant’s truck parked in front of the house, he called Detective Knapp and informed him that he believed he had located the defendant.
Detective Orenstein called for back-up, and when Officer Benjamin arrived, he and Officer Benjamin approached the house and knocked on the front door. When the defendant opened the front door, Detective Orenstein, who was standing on the front porch, immediately smelled the odor of marijuana emanating from inside the house. Because Detective Orenstein had seen a second vehicle parked directly behind the defendant’s truck, he asked the defendant if there was anyone else in the house. The defendant responded that there was someone inside, but when Detective Orenstein asked the defendant who it was, the defendant responded, “oh, no, there is nobody here.”
As he was talking to the defendant, Detective Orenstein testified he heard a door slam in the house. Detective Orenstein stepped into the foyer, secured the defendant, and while Officer Benjamin maintained control over the defendant, Detective Orenstein headed in the direction of the slamming door, announced his presence, and ordered the occupants to come out. When there was no response to his command, Detective Orenstein proceeded to the general area where he heard the door slam and discovered Mr. Perez in a bathroom. After taking Perez into custody, Detective Orenstein called for additional back-up to secure the defendant and Perez so that Detective Orenstein could sweep the remainder of the house. When additional back-up arrived, Detective Or-enstein and Officer Benjamin continued the security sweep of the house, where they observed marijuana paraphernalia, a large quantity of small marijuana plants in a bedroom, and a marijuana hydroponics lab in the garage. After concluding the security sweep of the house, Detective Or-enstein asked the defendant for consent to search the house. When the defendant did not consent, Detective Orenstein obtained and served a search warrant, which resulted in the seizure of fifty-three pounds of marijuana found in the garage and eighty-four young marijuana plants found in a bedroom. After the defendant was arrested by Detective Orenstein, Detective Knapp responded to the scene and arrested the defendant on his ease involving the marijuana hydroponics laboratory found in the apartment.

*68
The trial court erred in suppressing the evidence

The entry onto the defendant’s property, the initial entry into the defendant’s house, and the subsequent protective search were all lawful.
The Fourth Amendment is implicated only when the government invades an area in which a person entertains a legitimate or justifiable expectation of privacy. Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Although the Fourth Amendment protects people, not places, it is still necessary to consider the nature of the place in which legitimate privacy expectations are being asserted. Katz, 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring).
As the majority recognizes, when the officers entered the defendant’s property, which was open to the public, and knocked at his front door, the Fourth Amendment was not implicated. When the defendant voluntarily opened the door, and the officers, who were aware of the defendant’s history of operating marijuana grow houses, smelled the marijuana, they clearly had probable cause to arrest the defendant and to search the house. Although a warrant-less entry to arrest the defendant and to search the house would not be constitutionally permissible on probable cause alone, where, as here, exigent circumstances existed, the seizure of the defendant and the protective sweep conducted were lawful. The evidence seized was as a result of a valid search warrant obtained after the premises and the occupants of the house were secured. And, as the majority recognizes, even if the seizure of the defendant and the protective sweep of the house were unlawful, the evidence seized would have been inevitably discovered by lawful means. Thus, suppression of the evidence is error.

The officers’ presence at the defendant’s front porch and the knock on the defendant’s front door did not implicate the Fourth Amendment

The law is clear in Florida that the officers’ presence on the defendant’s front porch, knock on the defendant’s front door, and conversation with the defendant while standing on the porch outside of the defendant’s residence did not implicate the Fourth Amendment and did not require probable cause, reasonable suspicion, or a warrant. The officers’ presence on the defendant’s porch was therefore lawful. As the Florida Supreme Court specifically held in State v. Morsman, 394 So.2d 408, 409 (Fla.1981), “[u]nder Florida law it is clear that one does not harbor an expectation of privacy on a front porch where salesmen or visitors may appear at any time.” Similarly, in Davis v. United States, 327 F.2d 301, 303 (9th Cir.1964), the Ninth Circuit Court of Appeals held:
[Tjhere is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person’s right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man’s “castle” with the honest intent of asking questions of the occupant thereof — whether the questioner be a pollster, a salesman, or an officer of the law.
In State v. Triana, 979 So.2d 1039 (Fla. 3d DCA 2008), this Court held that “a knock on the door and subsequent discussion is a purely consensual encounter, which officers may initiate without any objective level of suspicion,” and “[t]he fact that a consensual encounter takes place at the entrance of an individual’s home does not call into question or in any way lessen the propriety of a consensual encounter.” Id. at 1043; see also State v. Pereira, 967 *69 So.2d 312, 314 (Fla. 3d DCA 2007) (“We follow those cases which hold that there is no reasonable expectation of privacy at the entrance of property which is open to the public, including the front porch.”); United, States v. Cruz-Mendez, 467 F.3d 1260, 1264 (10th Cir.2006) (“[A] ‘knock and talk’ is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion.”); United States v. Cormier, 220 F.3d 1103, 1109 (9th Cir.2000) (“[N]o suspicion needed to be shown in order to justify the ‘knock and talk.’ ”).
The Second District Court of Appeal in Nieminski v. State, 60 So.3d 521 (Fla. 2d DCA 2011), examined whether law enforcement may open a closed but unlocked gate and walk to the front door of a house to engage in a “knock and talk.” The court concluded that “a citizen’s encounter, including a knock and talk, is not regarded as a search or seizure,” id. at 526 but rather, it is “a purely consensual encounter, which officers may initiate without any objective level of suspicion.” Id. at 527 (quoting Hardin v. State, 18 So.3d 1246, 1247 (Fla. 2d DCA 2009)). The court also found that absent a “no trespassing” sign or similar warning that the fence and gate were intended to keep people out, the officers may enter onto property without violating the Fourth Amendment. Id.; see also Bennett v. City of Eastpointe, 410 F.3d 810, 821 (6th Cir.2005) (“A purely consensual encounter between a police officer and a citizen does not implicate the Fourth Amendment.”); Murphy v. State, 898 So.2d 1031, 1032 n. 4 (Fla. 5th DCA 2005) (recognizing that a “knock and talk” conducted at Murphy’s motel room is a procedure used by law enforcement as an investigative tool where there is no need for probable cause or a warrant).
In order to initiate a “knock and talk,” there is no requirement that law enforcement must be investigating a possible crime being committed on the premises. Because a knock and talk is not based on probable cause or even reasonable suspicion, no citizen complaint or tip from an informant is required. In State v. Navarro, 19 So.3d 370, 373-74 (Fla. 2d DCA 2009), the Second District Court of Appeal reversed the trial court’s order suppressing evidence of a grow house where the “knock and talk” was based on nothing more than a hunch. The Second District found that “the circuit court’s conclusion that a knock and talk cannot be based on a hunch and must stem from a tip or complaint finds no support in the case law” Id. at 373. Specifically, the Second District held:
The circuit court’s ruling conflicts with the proposition that police officers may approach a residence and speak to the residents just as any private citizen may. Thus, the circuit court fell into error when it ruled that the knock-and-talk encounter at issue in this case amounted to illegal police conduct.

Id.

However, as this Court and others have recognized, a “knock and talk” consensual encounter may evolve into a “constructive entry” when the police, while not entering the house, use tactics that essentially force the occupant out of the house. Triana, 979 So.2d at 1044. As to what constitutes constructive entry, the court explained:
Constructive entry has been found when a suspect emerged from a house “in response to coercive police conduct.” United States v. Morgan, 743 F.2d 1158, 1166 (6th Cir.1984). Coercive police conduct occurs where there is “such a show of authority that [the] Defendant reasonably believed he had no choice but to comply.” United States v. Saari, 272 F.3d 804, 809 (6th Cir.2001).
*70 [However, t]he presence of police officers alone, absent any indication of coercive words or acts, misrepresentation, deception, or trickery is insufficient to raise an inference of submission to police authority.
Id. (first alteration in original).
The question of whether the show of force exhibited by the police elevates a consensual encounter to a non-consensual encounter rests on various factors, including the number of officers present and where they were positioned during the encounter; whether any weapons were drawn; whether there were any coercive actions, demands, or raised voices; and the time of the day or night. Id. at 1044-45. For example, although the initial knock and talk in Hardin was found lawful, the length of the encounter and the subsequent intimidation of the occupants was found to have vitiated the consent to search granted during the encounter. 18 So.3d at 1250. Similarly, in Luna-Martinez v. State, 984 So.2d 592, 598-99 (Fla. 2d DCA 2008), the Second District Court of Appeal held:
The key to the legitimacy of the knock- and-talk technique — as well as any other technique employed to obtain consent to search — is the absence of coercive police conduct, including any express or implied assertion of authority to enter or authority to search. In properly initiating a knock-and-talk encounter, the police should not “deploy overbearing tactics that essentially force the individual out of the home.” United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005). Nor should “overbearing tactics” be employed in gaining entry to a dwelling or in obtaining consent to search.
Clearly, when Detective Orenstein and Officer Benjamin initially entered the defendant’s property, which was not gated and was thus open to the public, approached and knocked on the defendant’s front door, and the defendant opened the door to speak with the officers, the encounter was a consensual encounter. Only two officers were present, they were in plain clothes, no guns were drawn, it was daytime, the officers did not have a drug sniffing canine with them, and no coercive tactics were used to force the defendant to open the door. Thus, the initial encounter did not implicate the Fourth Amendment, and it was lawful.

Probable cause was established during the initial encounter

When the defendant opened the front door to speak with the officers, the officers immediately smelled the odor of marijuana coming from inside the house. Detective Orenstein is an experienced law enforcement officer trained in the detection of narcotics who has investigated over one hundred marijuana cases. Additionally, the defendant’s residential marijuana cultivation business was well known to Detective Orenstein because he had previously arrested the defendant for operating a marijuana grow house in roughly the same neighborhood. Detective Orenstein also knew that Detective Knapp was looking for the defendant to arrest him for operating a grow house in an apartment the defendant was renting close by. Thus, it is clear, and the defendant does not dispute, that prior to any entry into the house, the officers developed probable cause unrelated to Detective Knapp’s case.

The warrantless entry and protective sweep were based on exigent circumstances

The majority holds that the warrantless entry into the defendant’s residence and the protective sweep conducted by Detective Orenstein were unlawful. I disagree. Although a basic principle of the Fourth Amendment is that - searches and seizures inside a home without a warrant are pre *71 sumptively unreasonable, Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court has recognized that this presumption may be overcome in some circumstances because the “ultimate touchstone of the Fourth Amendment is ‘reasonableness.’ ” Kentucky v. King, — U.S. —, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)).

Seizure of the defendant and the war-rantless protective sweep of the house were lawful

As Justice Black stated in Vale v. Louisiana, 399 U.S. 30, 36, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (Black, J., dissenting):
The Fourth Amendment to the United States Constitution prohibits only “unreasonable searches.” A warrant has never been thought to be an absolute requirement for a constitutionally proper search. Searches, whether with or without a warrant, are to be judged by whether they are reasonable, and, as I said, speaking for the Court in Preston v. United States, 376 U.S. 364, 366-367, 84 S.Ct. 881, 882-883, 11 L.Ed.2d 777 (1964), common sense dictates that reasonableness varies with the circumstances of the search. See, e.g., Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).
(footnote omitted).
“Accordingly, the warrant requirement is subject to certain reasonable exceptions.” King, 131 S.Ct. at 1856. One well-recognized exception is the existence of exigent circumstances. Id. A warrantless entry, therefore, may be justified where there exists both probable cause and exigent circumstances. United States v. Burgos, 720 F.2d 1520, 1525 (11th Cir.1983); Mercier v. State, 579 So.2d 308, 309 (Fla. 2d DCA 1991) (“A warrantless entry must be justified by probable cause and exigent circumstances.”).
In the present case, the warrantless entry was lawful, as it was based on probable cause and exigent circumstances. The officers had lawfully entered onto the defendant’s unfenced property and knocked on the defendant’s front door. When the defendant opened the door, the officers smelled marijuana, which supplied the probable cause to arrest the defendant on drug charges separate from the crimes that brought the officers to the defendant’s home in the first place. Then, based on the exigent circumstances, the officers lawfully secured the defendant and conducted a protective security sweep of the house prior to obtaining a warrant. The exigent circumstances were based on the second vehicle parked behind the defendant’s vehicle; the defendant’s contradictory answers regarding whether there was anyone else in the house (first he said yes and then he said no); hearing a door slam within the house; the nature of narcotics which can be easily destroyed; and the possibility that someone in the house could present a danger to the officers.
The risk of removal or the destruction of narcotics has long been recognized as an exigent circumstance obviating the need to obtain an arrest or search warrant. See United States v. Rubin, 474 F.2d 262, 268 (3d Cir.1973). As the Supreme Court noted in King, “[djestruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain.” King, 131 S.Ct. at 1857; see also U.S. v. Tobin, 923 F.2d 1506, 1510 (11th Cir.1991) (holding that in narcotics cases, “the need to invoke the exigent circumstances exception to the warrant requirement is ‘particularly compelling in narcotics eases’ because narcotics can be so quickly destroyed” (quoting *72 United States v. Young, 909 F.2d 442, 446 (11th Cir.1990))).
Whether exigent circumstances existed is evaluated based on the totality of the circumstances. Seibert v. State, 923 So.2d 460, 468 (Fla.2006). The test is an objective one and the “appropriate inquiry is whether the facts ... would lead a reasonable, experienced agent to believe the evidence might be destroyed before a warrant could be secured.” Tobin, 928 F.2d at 1510 (quoting U.S. v. Rivera, 825 F.2d 152,156 (7th Cir.1987)).
In the instant case, the warrantless entry, seizure of the defendant, and the protective sweep were all lawful based on probable cause and exigent circumstances. The officers had probable cause to believe the defendant was growing and/or storing marijuana in the house. The odor of marijuana emanating from the house and onto the front porch when the defendant opened the front door was strong enough to be easily detected by Detective Oren-stein’s ordinary sense of smell. Detective Orenstein had previously arrested the defendant for operating a marijuana grow house, and on that very same day, Detective Knapp intended to obtain a warrant for the defendant’s arrest for a separate marijuana cultivating operation. Additionally, the defendant gave conflicting answers when asked if there was anyone else in the house. First, he said there was someone in the house, and then he maintained there was not. The defendant’s claim that there was no one else in the house justifiably elevated Detective Oren-stein’s concern that the evidence might be destroyed because he had observed a second vehicle parked behind the defendant’s truck and heard a door slam while he was talking to the defendant — clearly indicating that the defendant was not alone in the house — and the defendant, who had previously been arrested by the same detective, knew the detective was aware of his criminal past and had smelled the marijuana in the house. Under these circumstances, a reasonable, experienced officer would be justified in his belief that some of the evidence might be destroyed before a warrant could be secured.
This conclusion is amply supported by case law. The facts in Tobin are similar to the facts in this case. While conducting a surveillance in the neighborhood of co-defendant Ackerson’s house, the agents observed Tobin approach Ackerson’s house, engage in suspicious behavior, and then enter the house through the garage. The agents decided to investigate. They knocked at the front door, Ackerson opened the door, and, while the agents were speaking with Ackerson, they smelled marijuana coming from the inside the house. When the agents told Acker-son what they had observed — the suspicious off-loading of bags into the garage— Ackerson denied the activity had occurred and denied that anyone else was in the house. Ultimately, the agents arrested Ackerson and conducted a warrantless search of the house.
The Eleventh Circuit held that the initial discussion between Ackerson and the agents was a consensual encounter; the odor of marijuana coming from inside the house gave rise to probable cause; and, based on the presence of three vehicles on the scene and Ackerson’s false responses about Tobin’s presence, exigent circumstances existed justifying the warrantless protective sweep of the house. “[T]he defendants and anyone else who might have been present in the house would have been aware of the agent’s suspicions at that moment. Danger that the defendants or someone else inside the house might destroy the evidence thus provided the exigent circumstances required to justify a *73 warrantless search.” Tobin, 923 F.2d at 1512.
Also instructive is Gilbert v. State, 789 So.2d 426 (Fla. 4th DCA 2001). In Gilbert, the Fourth District noted that “[e]xigent circumstances are one exception to the warrant requirement. While there is no exhaustive list of what constitutes exigent circumstances to permit a warrantless entry of a constitutionally protected space, imminent destruction of evidence is one such circumstance.” Id. at 428 (citing Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)). Applying this standard, the Fourth District concluded that exigent circumstances existed, stating:
[W]e have no difficulty in determining that the facts were such as to lead a reasonable police officer to believe that the evidence would have been destroyed before a warrant could be obtained. The officers were dispatched to appellant’s motel room, not on a suspicion of narcotics but by a call that the occupant of the room wished to surrender on other warrants. Appellant opened the door, allowing the officers to see the contraband that was only two to three feet from the door. Obviously, appellant also became aware that the officers viewed the contraband, and under any objective view of the facts the officers acted reasonably in immediately entering and seizing the contraband before appellant had the opportunity to dispose of it.
Id. at 429 (emphasis added).
As these cases demonstrate, whether exigent circumstances exist is an objective test based on the totality of the circumstances, including that drugs are easily destroyed when the occupants of a residence are alerted to the presence of law enforcement who by sight or smell have probable cause to obtain a warrant. Under the facts of this case, it was reasonable for an experienced officer to believe that the evidence might be destroyed before a warrant could be secured. Thus, the war-rantless entry and protective sweep of the residence were lawful.
Based on the exigent circumstances, the defendant was taken into custody, a protective sweep was conducted, and a search warrant was obtained. The officers would not have had the lawful authority to enter absent a warrant if the defendant had not opened the door to speak with the officers (which he was legally free to refuse to do), the officers had not smelled the marijuana, and the defendant had not given contradictory answers about who was in the house.

Inevitable discovery

As already demonstrated, the officers’ warrantless entry and protective sweep of the residence, which were based on probable cause and exigent circumstances, were lawful. However, even if they were not, I agree with the majority that the inevitable discovery rule protects the evidence from suppression.
In Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the inevitable discovery rule, which allows evidence obtained as the result of unconstitutional police procedure to be admitted if the evidence would ultimately have been discovered by legitimate means. See also Moody v. State, 842 So.2d 754, 759 (Fla. 2003) (discussing the inevitable discovery doctrine). Further, in Jeffries v. State, 797 So.2d 573, 578 (Fla.2001), the Florida Supreme Court noted that “[i]n order to apply this doctrine, there does not have to be an absolute certainty of discovery, but rather, just a reasonable probability.” Jeffries, 797 So.2d at 578 (citing United States v. Brookins, 614 F.2d 1037 (5th Cir.1980)).
*74 In Segura v. United States, 468 U.S. 796, 798, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the United States Supreme Court held that where law enforcement has probable cause to believe that evidence of criminal activity is on the premises, they may secure the premises while a search warrant is being obtained. The Court reasoned that because the evidence would inevitably have been discovered, as it was, upon execution of the valid search warrant, the trial court erred in suppressing the evidence. The following are decisions from the various Florida District Courts of Appeal which have applied the inevitable discovery doctrine.
In Mercier v. State, 579 So.2d 308 (Fla. 2d DCA 1991), law enforcement officers, who had the defendant’s apartment under surveillance, sent a buyer to the apartment to purchase cocaine. After the purchase, armed with probable cause but without a warrant, the officers entered the apartment, seized the defendant and the premises, and occupied the defendant’s home for fifteen hours while they obtained a warrant. That law enforcement had probable cause was not in doubt. The issue, however, was whether the circumstances constituted exigent circumstances. The Second District ultimately concluded that whether the warrantless entry was justified based on probable cause and exigent circumstances was “not relevant to the admissibility of the challenged evidence [because hjaving been seized under a warrant with a basis independent of the entry, the evidence was admissible.” Id. at 309. In reaching this conclusion, the Second District specifically relied on Segura, 468 U.S. at 813-14, 104 S.Ct. 3380, which held that evidence seized pursuant to a valid search warrant that is based on information known to police before the illegal entry and that is wholly unrelated to entry is not tainted. Mercier, 579 So.2d at 309.
Numerous decisions have likewise found evidence obtained after unconstitutional police actions admissible under the inevitable discovery doctrine. See Cummings v. State, 956 So.2d 559, 560 (Fla. 5th DCA 2007) (holding that the evidence was admissible under the inevitable discovery doctrine, as that doctrine “requires the state to establish by a preponderance of the evidence that the police ultimately would have discovered the evidence independently of the improper police conduct by ‘means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure’ ” (quoting Craig v. State, 510 So.2d 857, 863 (Fla.1987))); Carter v. State, 868 So.2d 1276, 1278 (Fla. 4th DCA 2004) (declining to address whether the stop was lawful where there existed a reasonable probability that the evidence would have inevitably been discovered through lawful means); Conner v. State, 701 So.2d 441, 443 (Fla. 4th DCA 1997) (finding that the trial court properly applied the inevitable discovery doctrine and “the state carried its burden of establishing by a preponderance of the evidence that the contents of the safe would have inevitably been discovered in the course of a legitimate investigation”); State v. Ruiz, 502 So.2d 87, 87 (Fla. 4th DCA 1987) (reversing the trial court’s order suppressing the evidence and concluding that the evidence should have been admitted under the inevitable discovery doctrine).
In the instant case, the evidence was seized pursuant to a valid search warrant, not during or as a result of the protective sweep conducted by the officers. Since probable cause existed prior to any allegedly unconstitutional conduct, it is clear that the evidence seized during the execution of the search warrant inevitably would have been discovered had the officers secured the residence and waited for the issuance of the warrant prior to conducting *75 the protective sweep of the residence. While the warrantless entry was lawful in order to secure the premises, the legality of the initial entry has no bearing on whether the evidence first discovered during the protective sweep of the residence that was later seized pursuant to a valid search warrant was lawful. See Segura, 468 U.S. at 798-99,104 S.Ct. 3380.
In Segura, the agents knocked at the apartment door, Ms. Colon answered, and they entered Segura’s apartment without requesting or receiving permission. Id. at 800, 104 S.Ct. 3380. The agents then conducted a limited security check of the apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence. Id. During their sweep of the premises, they observed, in a bedroom in plain view, various accoutrements of drug trafficking. Id. at 801, 104 S.Ct. 3380. None of the items was disturbed by the agents. Id. Ms. Colon was arrested, and two agents remained in the apartment while a search warrant was obtained. Id. Upon execution of the search warrant, various items found during the search, as well as those items observed during the security check, were seized. Id. The trial court and the court of appeals determined that the initial warrantless entry and security sweep were not justified by exigent circumstance and were therefore unlawful. Id. at 803, 104 S.Ct. 3380. The government did not challenge that finding. Id. Thus, the sole issue addressed by the Supreme Court was whether the evidence seized pursuant to the search warrant should be excluded as “fruit” of the illegal police conduct. Id.
First, the Court noted that where law enforcement officers have probable cause to believe that evidence of criminal activity is on the premises, it does not violate the Fourth Amendment to secure the premises to preserve the status quo while a search warrant is sought. Specifically, it stated that “ ‘unless there is some kind of power to prevent removal of material from the premises, or destruction of material during this time, the search warrant -will almost inevitably be fruitless.’ ” Id. at 809 n. 7, 104 S.Ct. 3380 (quoting Erwin N. Griswold, Criminal Procedure, 1969 — Is It a Means or an End?, 29 Md. L. Rev. 307, 317 (1969)). Additionally, the Court found no distinction between securing the premises from within or from outside of the residence, as in either case, it interferes with the possessory interests of the owners to the same extent. Id. at 798, 104 S.Ct. 3380. Thus the Court held:
[W]here officers, having probable cause ... arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the period here involved, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment’s proscription against unreasonable seizures.

Id.

Additionally, the Court found that, assuming there was an illegal entry, suppression of the evidence was only required if the initial entry tainted the discovery of the evidence challenged. Id. at 799, 104 S.Ct. 3380. In answering this question, the Court held that “the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as ‘fruit’ of the illegal entry....” Id. at 799, 104 S.Ct. 3380.
The facts in the instant case lead to the same conclusion. Regardless of whether the initial entry and protective sweep were lawful, the evidence seized pursuant to a *76 valid search warrant would inevitably have been found absent any unlawful police conduct. Because Detective Orenstein had probable cause to believe the residence contained evidence of illegal drug activity prior to any entry, he could have obtained, and did obtain, a valid search warrant. While waiting for the issuance of the warrant, he had the legal right to secure the premises. Because the evidence seized in executing the search warrant was based on probable cause developed prior to entry of the residence and absent any illegal police conduct, it was lawfully seized. The suppression of the evidence was therefore error, and I accordingly agree with the majority that the trial court’s order suppressing the evidence must be reversed.

. Although the defendant pled guilty to the charges in case number 05-37152 on January 13, 2006, the defendant filed, a motion to vacate his plea in that case after his arrests for similar charges in case numbers 07-10525 and 07-10526(A). The trial court granted the defendant’s motion to withdraw his plea and subsequently suppressed the evidence in all three cases.