736 So.2d 763 (1999)
Sherry MAGGARD, Appellant,
v.
STATE of Florida, Appellee.
No. 98-01118.
District Court of Appeal of Florida, Second District.
July 2, 1999.
*764 James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anne E. Sheer, Assistant Attorney General, Tampa, for Appellee.
PARKER, Judge.
Sherry Maggard appeals the final judgment entered after she pleaded guilty to three counts of uttering a forged instrument, one count of petit theft, and one count of grand theft. Maggard reserved her right to appeal the denial of her dispositive motion to suppress evidence based on an alleged illegal search and seizure. We reverse because the illegal search and seizure of the items found in an outdoor grill located in Maggard's backyard tainted the subsequent consent to search Maggard's residence.
The following facts were established at the hearing on Maggard's motion to suppress. Deputy Sheriff Faulk responded to a burglary call from Mr. Prince, who informed the deputy that his home had been burglarized while he was away. Prince indicated that he was missing some canceled checks, check books, credit cards, credit card receipts, money, and a pocket watch. Prince suspected that his neighbors, the Maggards, were involved in the burglary. The deputy visited Maggard's residence, a mobile home. The mobile home had fencing around the yard on all sides except the front. The deputy went to the front door of the home and knocked, but no one responded. He then proceeded to the backyard of the residence. The only way to get to the backyard was to go between the mobile home and the fence.
The deputy knocked on the back door and several minutes later, Maggard responded. While waiting for a response, the deputy noticed an open barbecue grill within five feet of the back door. Upon inspection of the grill, the deputy saw some partially burned documents which contained Prince's name.
When asked about the documents in the grill, Maggard indicated that her children were playing in an orange grove and that she found the papers in the grove and burned the receipts so that her children would not be blamed for taking them. Maggard showed the deputy the area where she found the documents. The deputy noticed a firepot in this area where additional documents belonging to Prince were located.
The deputy seized the receipts from the grill and the firepot, left the home, and requested additional officers. Detectives Gordon and Chauncy arrived at the Maggard residence, and Maggard gave them the same explanation as she had given the deputy. Thereafter, Maggard, after some reluctance, consented to a search of her *765 residence. During the search, the officers found several credit card receipts which showed the recent purchase of some food and some tennis shoes for her children. The officers traced the receipts and discovered these items had been purchased with Prince's credit cards. When Maggard was confronted with this information, she admitted using a credit card and bank card to purchase the shoes and the food.
Under the facts of this case, we agree with Maggard that the deputy, without a search warrant, had no authority to enter Maggard's backyard which was not plainly visible to the public and to thereafter seize the papers from the grill located near the back door of the residence. See State v. Morsman, 394 So.2d 408, 408 (Fla. 1981) (officer cannot seize contraband in plain view without obtaining a warrant if the officer does not have a legal right to be at his viewpoint). We conclude that the trial court erred when it stated that it believed that the officer had a right to walk to the back door of a home just like it were the front door. The supreme court, in Morsman, has made it clear that while there is no expectation of privacy on a front porch, "the backyard of a residence is more private because passersby cannot generally view this area." Id. at 408. In this case, Maggard's mobile home was surrounded on three sides in the back with a fence, and the testimony supported the fact that one could not see the backyard from the front of the house, much less the grill and the contents of the grill. The deputy elected to seize the receipts before obtaining a search warrant even though no exigent circumstances existed. Accordingly, this warrantless seizure violated Maggard's Fourth Amendment rights.
The State argues that even if this was an illegal seizure, the error is harmless because the charges against Maggard were based on the items found in the home after she signed a consent allowing the search. However, it cannot be said that this consent was freely and voluntarily given due to the unconstitutional taint resulting from the illegal seizure. In Jordan v. State, 707 So.2d 338, 338 (Fla. 2d DCA 1998), this court stated that "[w]hen the initial police activity is illegal, the State must establish by `clear and convincing evidence' that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given." (citations omitted). Generally, this taint can be removed by the police informing the defendant of his or her right to refuse to consent. See id. at 339.
The police asked Maggard to give statements and to allow a search of her home based on the documents found in the grill. They did this without informing her that she had the right to refuse. There were three officers in her home asking her questions. After refusing to consent several times, she finally signed the consent form. The officers told her that they would not arrest her, but that she would receive a notice to appear in court. They then took her to the sheriff's office, obtained a taped statement, without providing any Miranda[1] warnings, and returned her to her home. We conclude that nothing in this record supports that there was a break in the chain of illegality. Accordingly, we reverse the trial court's denial of Maggard's motion to suppress and remand with directions to discharge her.
Reversed and remanded.
PATTERSON, C.J., and CASANUEVA, J., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).