ALLEN, J.
The appellant challenges convictions entered after the denial of his motion to suppress evidence. The evidence should have been suppressed as the product of an unlawful search in connection with the wan'antless entry into the appellant’s back yard, and the convictions are therefore reversed.
At hearings on the motion to suppress it was indicated that sheriffs officers received a tip about possible ongoing criminal activity at the appellant’s residence, and they subsequently went to his home to question him about this. The officers approached the front door and knocked there, but received no response. One of the officers then walked around to the back of the residence and knocked on a back door, where he also received no response. While there, that officer observed incriminating evidence behind the residence and a search warrant was then obtained. The appellant sought to suppress the evidence which resulted from the incursion into his back yard, both before and after the warrant was obtained, arguing that the warrantless entry into the backyard area was an unlawful search.
This case is strikingly similar to the factual scenario addressed in Waldo v. State, 975 So.2d 542 (Fla. 1st DCA 2008). In that case this court confirmed that, in accordance with the Florida Supreme Court’s decision in State v. Morsman, 394 So.2d 408 (Fla.1981), the officers were entitled to approach the front door of the residence, but the warrantless entry into the back yard was an unlawful search. See also Maggard v. State, 736 So.2d 763 (Fla. 2d DCA 1999).
The state attempts to distinguish Waldo by relying on testimony here which indicated that visitors to homes in the rural area where the appellant lives are sometimes received at the back door to those residences. The notion that this custom might bear upon the reasonableness of the officers’ actions, and the appellant’s expectations of privacy, is suggested in a concurring opinion in Waldo. But that notion was not adopted by the Waldo majority, and reflects only an individual view which is not within the court’s holding. See Miller v. State, 980 So.2d 1092 (Fla. 2d DCA 2008). The state also relies on the officers’ testimony indicating that upon knocking at the front door they perceived circumstances which led them to believe someone might be inside the residence and either unwilling to come to the front door or unable to hear the knocking. It was further indicated that the officer who walked around the residence to approach the back door wanted to knock there, to see if he could get a response at that location. But again, this does not distinguish this case from Waldo, with that opinion indicating that the officers there were also trying to obtain a response at the back door after their knocks went unanswered at the front door. The constitutional protection and expectation of privacy in the side and backyard area of the home does not depend on whether someone might be home, or if visitors may sometimes be received at a location other than at the front door. Indeed, the Florida Supreme Court’s decision in Morsman, and the caselaw such as Maggard, which accords with that ruling, clearly establishes that residents have a constitutionally-protected privacy interest in the side and backyard area of their *1080 home. See also, e.g., State v. Roy, 944 So.2d 403 (Fla. 3d DCA 2006); Glass v. State, 736 So.2d 788 (Fla. 2d DCA 1999); Potts v. Johnson, 654 So.2d 596 (Fla. 3d DCA 1995).
In addition, the state refers to federal cases such as United States v. Anderson, 552 F.2d 1296 (8th Cir.1977), United States v. Daoust, 916 F.2d 757 (1st Cir.1990), and Alvarez v. Montgomery County, 147 F.3d 354 (4th Cir.1998). See also Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir.2003). Several of those cases involve significantly different facts than the situation here. And more importantly, they are not controlling in the present case as they do not comport with the Florida decisions regarding the constitutional protection afforded to the areas away from the front entrance to a residence. The Florida Supreme Court pointedly emphasized that privacy interest in Morsman, and the decisions of the United States Supreme Court have continued to recognize the sanctity of the home as being “at the very core” of the constitutional protection. See Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). That protection extends to the outside area adjacent to the home, and the Supreme rCourt has repeatedly observed that such “overriding respect for the sanctity of the home” has been “embedded in our traditions since the origins of the Republic.” Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); see also, e.g., Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The constitutional protection which Morsman confirms in the side and backyard area of a home is consistent with the pronouncements of the United States Supreme Court, and any contrary decisions of the lower federal courts, in the variety of circumstances involved in those cases, do not diminish that protection in Florida.
The state’s further claim that the officers acted in good faith does not overcome the constitutional violation, as the subsequent warrant was obtained after the officers’ unlawful entry into the back yard and resulted from that misconduct. This constitutional violation tainted the ensuing evidence, which should have been suppressed. See Waldo, supra. The convictions are therefore reversed and, because the suppression ruling was established as a dispositive issue, the appellant is entitled to be discharged.
BARFIELD and LEWIS, JJ., concur.