KELLY, Judge.
Jose Ferrer appeals from his judgments and sentences for trafficking in marijuana, possession of a place used for trafficking, and renting a place used for trafficking. He argues that the trial court erred in denying his motion to suppress evidence collected pursuant to a search warrant that authorized a search of his home. He contends that because the information used to support the search warrant was obtained when officers engaged in an improper search of the curtilage of his home, the evidence seized pursuant to the warrant should be suppressed. We agree and accordingly reverse Ferrer’s judgment and sentences.
The evidence presented at the hearing on Ferrer’s motion to suppress established that he owned a two-story home in Collier County that officers from the sheriffs department suspected was being used to grow marijuana. Access to Ferrer’s property was barred by an electric gate at the end of the driveway and a fence around the perimeter of the land. Accordingly, the officers investigating Ferrer conducted surveillance from the vacant lot next door and from the street. While they were conducting surveillance, Ferrer came to the gate to retrieve some trash cans from the street. The officers approached him and spoke to him from outside the gate. The officer who spoke to Ferrer testified that he “spoke with the subject at the gate, advised him we believed there was criminal activity occurring at the residence, and asked if we could enter the property to speak with him about it.” The officer further testified that he “asked if we could speak to him on the other side of the gate.”
Ferrer opened the gate with a remote control. One of the officers asked Ferrer for identification and then followed him down the driveway that encircled the house so that Ferrer could get identification out of a car parked on one side of the house. While Ferrer and the officer went to retrieve the identification, two other officers went to the back of the house and up the stairs to the second story porch where they smelled marijuana. One of those officers claimed to have smelled marijuana from the bottom of the stairs. Based on the odor of marijuana, the officers detained Ferrer until they could obtain a warrant to search the house. The search yielded contraband that was the subject of the motion to suppress.
After the hearing, the court entered a written order denying the motion to suppress which contained no factual findings and no explanation for the denial. During the hearing, however, the court stated: “[0]n the evidence that I’ve heard, how did they get from inside the gate, [Prosecutor], meeting with him, which I said is appropriate, to the curtilage area to smell the marijuana?” Thus, while it is unclear what legal basis the trial court relied on to deny the motion, the court’s comments at the hearing indicate that as a factual matter, it recognized the limited scope of Ferrer’s consent.
Searches conducted without a warrant are per se unreasonable under the *862 Fourth and Fourteenth Amendments unless they are conducted within one of the recognized exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Consent is one of those exceptions. A consensual search is manifestly reasonable so long as it remains within the scope of the consent. Florida v. Jimeno, 500 U.S. 248, 251-52, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). “The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?” Id. at 251, 111 S.Ct. 1801 (citing Illinois v. Rodriguez, 497 U.S. 177, 183-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). “The scope of a search is generally defined by its expressed object.” Id. A consensual search may not legally exceed the scope of the consent supporting it. Walter v. United States, 447 U.S. 649, 656-57, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); see also 4 Wayne R. LaFave, Search & Seizure § 8.1(c), at 32 (4th ed. 2004) (“[Cjonsent should be construed as authorizing only that intensity of police activity necessary to accomplish the stated purpose.”).
In this case, the officers asked Ferrer to open the gate so they could talk to him on the other side, and he agreed to that request. We conclude that it was not objectively reasonable for the officers to conclude that Ferrer’s limited consent to entry for the purposes of talking to them on the other side of the gate authorized them to roam freely around the property. See Soldo v. State, 583 So.2d 1080, 1082 (Fla. 3d DCA 1991) (holding that the permission given to the officer by the defendant to enter the residence and sit on the living room couch did not include consent to walk down a hallway to a back bedroom). Because the officers did not have permission for a search of the property, the trial court should have granted Ferrer’s motion to suppress.
We reject the State’s contention that once Ferrer open the locked gate, general “knoek-and-talk” principles authorized the deputies to proceed to the front door area. See, e.g., State v. Navarro, 19 So.3d 370, 372-73 (Fla. 2d DCA 2009). The State argues that because the officers were free to proceed to the front door of the house to knock and talk, the evidence of marijuana was legally obtained under the “plain smell” doctrine. The flaw in this argument is that it does not recognize that the deputies’ encounter with Ferrer at the gate was a knock and talk encounter. Rather than leaving his property open for any member of the public to enter, Ferrer had taken steps to keep out uninvited visitors by fencing it and erecting an electric gate across his driveway, thereby demonstrating an expectation of privacy. Cf. Nieminski v. State, 60 So.3d 521, 525-27 (Fla. 2d DCA 2011) (finding no violation of privacy where officers entered fenced property through a closed, but unlocked, gate). Thus, while officers were free to approach the gate to conduct a knock and talk — which they did — the area inside the fence fell under the same constitutional protections as the residence itself, and the officers were not at liberty, absent consent, to approach the residence. Compare Fernandez v. State, , 63 So.3d 881, 883-84 (Fla. 3d DCA 2011) (holding that the defendant had a reasonable expectation of privacy in the fenced yard adjacent to his residence and that the momentary opening of the gate to allow the defendant to leave was not an invitation for police to enter); with State v. Triana, 979 So.2d 1039, 1045 (Fla. 3d DCA 2008) (finding no constitutional violation where the police had a consensual encounter with the defendant outside of the locked gate to the defendant’s property and the defendant *863 agreed to a search and opened the gate to allow the police to enter).
It is undisputed that the only thing Ferrer consented to was to speak to the officers “on the other side of the gate.” As explained above, when the officers proceeded to the front door they exceeded the scope of the consent given by Ferrer. The plain smell doctrine does not apply because the officers were not in a location where they had a legal right to be when they detected the odor. Cf. State v. Pereira, 967 So.2d 312, 314 (Fla. 3d DCA 2007) (holding that officers did not violate the defendant’s right to privacy by detecting the odor of marijuana from the front porch where the porch was not enclosed by a fence and was open to public access). Accordingly, we reverse the order denying Ferrer’s motion to suppress and remand with instructions to discharge Ferrer.
Reversed and remanded.
ALTENBERND and CRENSHAW, JJ„ Concur.