IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MATTHEW FRIEDSON,

      Appellant,

 v.                                       Case No. 5D15-3063

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed December 16, 2016

Appeal from the Circuit Court
for St. Johns County,
J. Michael Traynor, Judge.

James S. Purdy, Public Defender, and
Jacqueline Rae Luker, Assistant Public
Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Deborah A. Cheesman,
Assistant Attorney General, Daytona
Beach, for Appellee.


WALLIS, J.

      Matthew Friedson ("Appellant") appeals the trial court's denial of his motion to

suppress evidence obtained from his apartment pursuant to a search warrant. After the

trial court denied Appellant's motion to suppress, he entered a nolo contendere plea to

possession of marijuana with intent to sell[1] and possession of drug paraphernalia.[2] Appellant expressly reserved the right to appeal the denial of his motion to suppress, and the State stipulated that the order was dispositive. See Fla. R. App. P. 9.140(b)(2)(A)(i). Finding that the trial court erred by denying Appellant's dispositive motion to suppress, we reverse and remand with instructions to vacate Appellant's judgment and sentences.

The evidence at the hearing on Appellant's motion to suppress established that on the evening of September 1, 2014, Detectives Glenn English and Sean Tice with the St. Johns County Sherriff's Office went to Appellant's apartment to investigate an alleged battery. Before arriving at Appellant's residence, the detectives reviewed intel reports, which provided that Appellant was suspected of selling marijuana out of his apartment. The intel reports further provided that Appellant is deaf. Appellant's apartment complex consists of several one-story apartment buildings with outside entry. Each apartment has a defined concrete path leading from the sidewalk to the front door. Located approximately two feet to the right of Appellant's front door is a large window that sits above an air-conditioning unit. Small concrete steps under the window form a short walkway into a private front yard surrounded by a fence on three sides.

Upon arriving at Appellant's apartment, the detectives found the front door closed and blinds on the adjacent window drawn, but not fully shut. The detectives knocked on Appellant's door, hoping "he would hear vibrations of the door." When Appellant did not answer, the detectives moved off his front porch to the area directly in front of the window. The detectives then shined their flashlights through and banged on the window, at which

---

[1] § 893.13(1)(a), Fla. Stat. (2014).

[2] § 893.145, Fla. Stat. (2014).

2

point they saw Appellant sitting inside with his back facing them. The detectives continued to shine their flashlights at different angles in an attempt to get Appellant's attention.

When Appellant still did not respond, the detectives retrieved his cell-phone number from the intel reports and sent him a text message, stating that the Sheriff's Office wished to speak with him. Appellant did not answer the text message. While the detectives stood outside Appellant's window, his air-conditioning unit came on, allegedly blowing air from inside the apartment to the outside. Detective Tice then noticed the smell of marijuana emanating from the unit. The detectives left the residence and proceeded to locate the apartment manager for assistance in contacting Appellant. At the detectives' direction, the apartment manager unlocked and opened Appellant's door, and the detectives tried to get his attention by shining their flashlights inside. When Appellant did not respond, the apartment manager picked up a slipper near the front door and threw it towards Appellant. Appellant then noticed the parties at the front door and, according to Detective English, began "motioning his hand, like, you know, waving his hand like to come in."

After interviewing Appellant regarding the alleged battery by writing questions on a notepad, the detectives informed Appellant that they could smell marijuana inside his apartment. The detectives requested Appellant's permission to search the apartment, but he refused. Detective Tice then exited the apartment and attempted to obtain a search warrant while Detective English remained inside. After obtaining a search warrant, the detectives and additional officers searched Appellant's apartment, finding approximately twenty grams of marijuana packaged for sale and drug paraphernalia.

Appellant's evidence at the motion to suppress hearing included testimony from an expert in heating and air-conditioning, who testified that the air-conditioner at Appellant's apartment would not blow air from inside the apartment to outside the apartment. The apartment manager also testified that Appellant's air-conditioner does not operate in the way described by the detectives. However, the expert did not physically inspect Appellant's air-conditioner, and instead based his testimony on his general knowledge and review of the manuals for the air-conditioner model at Appellant's apartment.

The trial court ultimately denied Appellant's motion to suppress. As grounds for the denial, the trial court focused on the finding that Detective Tice smelled the odor of marijuana emanating from Appellant's apartment after the air-conditioning unit turned on, rejecting the expert's testimony that the air-conditioner does not operate in this fashion. The trial court further determined that Detective Tice was lawfully permitted to occupy the area in front of Appellant's window where he smelled marijuana. The trial court noted that, even if the detectives' entry into Appellant's home was unlawful, "inclusion of information gathered within the home in the affidavit for the search warrant would not invalidate the search warrant." In light of this ruling, Appellant entered a negotiated nolo contendere plea, reserving his right to appeal the dispositive motion to suppress. The trial court withheld adjudication and sentenced Appellant to thirty-six months' drug offender probation for possession of marijuana and twelve months' probation for possession of paraphernalia, to run concurrently.

In considering a motion to suppress, we review the trial court's legal conclusions de novo, but we defer to its factual findings provided that they are supported by competent, substantial evidence. Ferryman v. State, 919 So. 2d 710, 712 (Fla. 5th DCA

4

2006). Evidence obtained from an unlawful search cannot serve as the basis for issuance of a search warrant. State v. Hood, 68 So. 3d 392, 395 (Fla. 2d DCA 2011). However, "[t]he inclusion of illegally obtained evidence in the supporting affidavit, where the affidavit contains other valid allegations sufficient to establish probable cause, does not invalidate a search warrant." State v. Hunwick, 434 So. 2d 1000, 1001 (Fla. 4th DCA 1983) (citing Neary v. State, 384 So. 2d 881 (Fla. 1980)).

The plain view doctrine applies when: "1) the police view the contraband from a place they have a legitimate right to be; 2) the incriminating character of the contraband is immediately apparent to the viewing police officer; and 3) the police officer has a lawful right of access to the contraband." Murphy v. State, 898 So. 2d 1031, 1033 (Fla. 5th DCA 2005) (citing Horton v. California, 496 U.S. 128 (1990); Rimmer v. State, 825 So. 2d 304, 313 (Fla. 2002)). "Just as evidence in the plain view of officers may be searched without a warrant, evidence in the plain smell may be detected without a warrant." Nelson v. State, 867 So. 2d 534, 537 (Fla. 5th DCA 2004) (citations omitted). "[T]he analysis to be employed in determining whether the warrantless seizure of the property is justified depends primarily on where the observation occurred." Jones v. State, 648 So. 2d 669, 676 (Fla. 1994). Thus, the plain smell doctrine applies only when law enforcement officers detect the odor while occupying a place where they have a legitimate right to be. See Ferrer v. State, 113 So. 3d 860, 863 (Fla. 2d DCA 2012).

The United States Supreme Court has explained that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers for all kinds of salable articles." Breard v. City of Alexandria, 341 U.S. 622, 626 (1951) (footnote omitted), abrogated on other grounds

5

by <u>Vill. of Schaumburg v. Citizens for a Better Env't</u>, 444 U.S. 620 (1980). This license permits law enforcement, as well as private citizens, "to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." <u>Florida v. Jardines</u>, 133 S.Ct. 1409, 1415 (2013).

> The key to the legitimacy of the knock-and-talk technique . . . is the absence of coercive police conduct, including any express or implied assertion of authority to enter or authority to search. In properly initiating a knock-and-talk encounter, the police should not "deploy overbearing tactics that essentially force the individual out of the home." Nor should "overbearing tactics" be employed in gaining entry to a dwelling or in obtaining consent to search.

<u>Luna-Martinez v. State</u>, 984 So. 2d 592, 599 (Fla. 2d DCA 2008) (quoting <u>United States v. Thomas</u>, 430 F.3d 274, 277 (6th Cir. 2005)).

The First District Court addressed the scope of a knock-and-talk in <u>Powell v. State</u>, 120 So. 3d 577 (Fla. 1st DCA 2013). In <u>Powell</u>, law enforcement received an anonymous tip that the defendant grew marijuana in his mobile home. <u>Id.</u> at 580. Officers arrived at the defendant's home, but he did not answer the door. <u>Id.</u> The officers then peered through a window "that was about two feet to the left of the front door," allowing them to see marijuana plants under a table in the kitchen. <u>Id.</u> The officers ultimately obtained a search warrant for the mobile home, and the trial court denied the defendant's motion to suppress the evidence obtained from the search. <u>Id.</u> at 581-82. On appeal, the First District Court explained that, while the law permits officers to perform a knock-and-talk, "[i]t is a different matter when police officers choose to physically enter other portions of a home's curtilage—areas where they have no right to be." <u>Id.</u> at 584. The court determined that "stepping off a porch, <u>even a few feet</u>, onto portions of the curtilage where persons are uninvited and then looking into the home at a sharp angle from a hand's

6

length away from the window pane" was not permissible. Id. at 586. Therefore, the court reversed the trial court's order denying the defendant's motion to suppress. Id. at 589.

Based on the foregoing, we find that the detectives exceeded the scope of their implied license by lingering at Appellant's apartment when he did not answer his door. The United States Supreme Court has made clear that law enforcement may knock, briefly wait, and leave if they elicit no response. See, e.g., Jardines, 133 S.Ct. at 1415. One would not expect a visitor, if their knocking elicited no response, to step off the front porch to shine flashlights through and bang on an adjacent window. See id. ("To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to—well, call the police.").

The State relies on the trial court's determination that the detectives did not occupy the curtilage of Appellant's home when Detective Tice smelled marijuana. We find that Powell controls because the circumstances in this case parallel the activity deemed impermissible by the First District Court. Powell similarly concerned the scenario where the officers stepped approximately two feet away from the front door to peer through an adjacent window. See 120 So. 3d at 588. Thus, although the officers only slightly entered the curtilage of the defendant's mobile home, the plain view doctrine did not apply because the officers nonetheless ventured into a constitutionally protected area. See id. Similarly, Detective Tice noticed the smell of marijuana only after moving off the front porch and peering through Appellant's window above the air-conditioner. Although the State argues the detectives would have smelled the marijuana from the front porch, direct

7

testimony contradicted that position because Detective English specifically testified that he never smelled marijuana while outside the apartment.

The State further argues that the area adjacent to Appellant's front step is not curtilage because it is a "common area[ ] shared by the residents in Appellant's apartment complex." The State relies on State v. Batista, where the Third District Court held that a resident had no reasonable expectation of privacy in the shared areas of an apartment building. 524 So. 2d 481, 482 (Fla. 3d DCA 1988). Unlike in Batista, the evidence in this case is that Appellant does not live in a large apartment building with a common lobby, hallways, or other areas frequented by all residents. Cf. id. Rather, our record evidence describes the area in front of Appellant's apartment as more akin to a private front yard. Furthermore, the State elicited no testimony at the suppression hearing to support its assertion that other residents utilize this area.

For these reasons, we find that the detectives exceeded the permissible scope of a knock-and-talk, venturing into constitutionally protected areas of Appellant's home to gain information forming the basis for a search warrant.[3] The detectives did not smell the marijuana while occupying a place they had a legitimate right to be, and thus the plain smell doctrine does not apply. See Ferrer, 113 So. 3d at 863. Having determined that the detectives improperly relied on the smell of marijuana as the basis for a search warrant,

---

[3] We decline to entertain the State's argument that law enforcement could reasonably rely on smelling marijuana once inside Appellant's apartment, as ordering the apartment manager to unlock and open Appellant's door clearly amounted to improper state action. See, e.g., Glasser v. State, 737 So. 2d 597, 598 (Fla. 4th DCA 1999) (holding that if the government becomes involved "either directly or as a participant or indirectly as an encourager of the private citizen's actions," courts will deem the private citizen an instrument of the State (quoting United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981))).

8

the evidence obtained pursuant to the warrant is inadmissible as "fruit of the poisonous tree," and the trial court erred by denying Appellant's motion to suppress. See Wong Sun v. United States, 371 U.S. 471, 477-78 (1963). Because the parties have stipulated that Appellant's motion to suppress is dispositive, we reverse with instructions to vacate Appellant's judgment and sentences.

REVERSED and REMANDED with Instructions.

SAWAYA and COHEN, JJ., concur.