DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JONATHAN OSORIO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-0654

[May 9, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes and Dina A. Keever-Agrama, Judges; L.T. Case No. 2015CF006056AMB.

Grey Tesh, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Richard Valuntas, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Jonathan Osorio appeals his withhold of adjudication and sentence for multiple drug-related offenses following a plea.[1] Appellant argues that the trial court erred by denying his motion to suppress inculpatory evidence which the police obtained during a warrantless search of his home. We agree and reverse.

Appellant, along with his father and brother, was arrested and charged with several drug-related offenses after two narcotics agents drove onto his family's rural property without a warrant and ultimately discovered marijuana and marijuana grow supplies in a barn behind the main house. Appellant moved to suppress the evidence supporting the charges against him on the grounds that it was obtained as the result of an illegal search.

---

[1] The specific charges were: one count of manufacture of a schedule I substance, one count of unlawful possession of property for the purpose of manufacturing a controlled substance, one count of possession of marijuana with intent to sell, and one count of possession of paraphernalia.

The matter proceeded to a suppression hearing wherein the following evidence was presented.

The State called the narcotics agents who arrested Appellant. The agents testified that prior to the day in question, they had been to Appellant's property three to five times for the purpose of surveilling a neighboring property. According to both agents, the prior owner of the property (who neither could name) gave them permission to be on the property but asked them to let him know they were there by knocking on the main house side door or, if no one answered, by going to the barn where the owner's son or nephew lived. One of the agents initially estimated that they had last been on the property within the last six months. However, after being confronted with evidence establishing that Appellant's family purchased the property in 2012 (thirty-two months prior to the date in question), both agents admitted that they had most likely not been on the property in almost three years. They also admitted that they did not check, or think to check, the property appraiser's website beforehand to ensure that the same person who gave prior consent still lived on the property. Finally, the agents admitted that none of the defendants in the case nor any members of their family gave them permission to be on the property. Both agents testified that their trip to the property on the day in question was "random."

With respect to the physical characteristics of the property, there are two structures on the property—a main home and a barn. The perimeter of the property is surrounded by foliage and a fence. The property was a rural tract located off of a very narrow road. On the day in question, the gate to the fence was open. The agents drove onto the property in an unmarked truck, parked near the main home, and knocked on the side door. While at the side door, one of the agents detected a light odor of marijuana in the air. However, the agent conceded that the "light odor" was not enough probable cause to obtain a warrant or conduct a warrantless search based on exigent circumstances. Shortly after the agents approached the home and knocked on the side door, a pitbull ran up to them, growling. The agents slowly walked back to their truck and then drove to the barn. They did not go to the front door or ring the front doorbell.

Upon arriving at the barn, the agents noticed that the main barn door was propped open and noted the overwhelming smell of marijuana. One of the agents walked through the open barn door and saw another partially open interior door. He also observed a case of ammunition and marijuana grow supplies, such as buckets and fertilizer. At this point, the agent

became suspicious that the property owners were growing marijuana and announced his presence inside the barn. When no one answered, the agent went through the interior door and encountered Appellant and bags of marijuana on the ground. Appellant was detained while one of the agents made an electronic request for a search warrant. After obtaining and executing the search warrant, agents found pounds of marijuana, grow supplies, a honey oil extractor, ovens, cash, and two weapons.

Appellant's brother testified that he and his family occupied the property continuously since 2012 and had never met either of the agents nor given them permission to come on their property. The brother explained that the main house was located 170 feet from the road leading to the property and that the barn was another 100 feet from the home. Appellant and the brother lived in the barn. He also testified that there were "No Trespassing" signs posted along the tree line surrounding the property.

At the conclusion of the presentation of the evidence, the court denied the motion based on the following legal conclusions:

> The burden in this case is on Defendants to establish by the preponderance of the evidence that they had a reasonable expectation of privacy on their premises to include an expectation that persons would not occasionally enter through the gate and approach their residence to talk to them. Because the law enforcement agents acted in good faith by driving onto the property through an open and unlocked gate and knocking on the side door of the residence, which due to the layout of the property and based on the previous owners' instructions was the preferred method of contacting the residents, they were legally on the property. The agents were on the premises to conduct a legitimate "knock and talk" with the residents who they believed still resided on the property. A "knock and talk" citizen's encounter does not constitute a search and seizure, as long as it does not violate a reasonable expectation of privacy. By driving onto the property through the unlocked gate and knocking on the side door, the agents did nothing different than any member of the public, including an "occasional deliveryman, salesperson, other solicitor, or neighbor," might do to contact the occupants of the premises, therefore the agents did not violate any reasonable expectation of privacy. Because the agents were legitimately on the property and knew from previous encounters with the residents that a member of the family lived in the barn and

3

owned a pit bull, the "knock and talk" encounter was still reasonable and legal when, after no one answered their knock on the side door of the residence, the agents approached the barn to speak with the owner of the dog.

After the court denied his motion to suppress, Appellant entered a guilty plea, reserving his right to appeal the court's suppression ruling. This appeal follows.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. As the United States Supreme Court held in *Katz v. United States*, 389 U.S. 347, 353 (1967), a "search" occurs within the meaning of the Fourth Amendment when government action invades an individual's justifiable or reasonable expectation of privacy. Under *Katz* and its progeny, a reasonable expectation of privacy exists if the individual has exhibited an actual, subjective expectation of privacy which society is prepared to recognize as reasonable. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979). When a citizen has a reasonable expectation of privacy, "police officers may not enter a [property] without a warrant, absent consent or exigent circumstances." *Levine v. State*, 684 So. 2d 903, 904 (Fla. 4th DCA 1996).

In the instant case, the court's denial of Appellant's motion to suppress was based on a hybrid finding that the agents had the prior owner's consent to enter the property and that Appellant had no reasonable expectation of privacy as to the side door of the main house or the barn. We first address whether the agents' previous encounters with the former owner gave the agents the authority to enter the property and proceed to the side door of the main house and then the barn. The question for our resolution is one of duration. Although the duration of continuing consent has not yet been specifically addressed by a Florida court, cases from other jurisdictions establish that in the context of the Fourth Amendment:

> [T]he proper rule is that a consent to search which is unlimited as to time or number of searches must be judged under a rule of reason. . . . [In this context,] what is reasonable is a factual determination to be made after considering all the circumstances under which the consent has been executed. . . . In judging what is reasonable deference should be given to the general rule that a consent is ordinarily given upon the understanding that the search will be conducted forthwith and that only a single search will be made.

*People v. Shelton,* 442 N.E.2d 928, 932 (Ill. App. Ct. 1982); *see also People v. Chism,* 189 N.W.2d 435, 445 (Mich. Ct. App. 1971) ("When consent is given to search an area, it does not mean the constitutional protection against unreasonable searches and seizures has been waived forever.").

The facts in this case are compelling. The consent upon which the agents relied was given by the previous owner approximately three years prior to the date of the search. There was no evidence that established the duration of the consent or the number of authorized encounters. Further, it is undisputed that Appellant and his family owned and occupied the property since 2012 and never spoke with or gave the agents their consent to enter the property. Against this backdrop, it is unreasonable to conclude that the prior owner's consent inured to the date of the search.

Next, we turn to the court's conclusion that Appellant had no reasonable expectation of privacy as to the side door of the main house or the barn. Generally speaking, private citizens do not have a reasonable expectation of privacy as to persons approaching the front door of their residence. *See Nieminski v. State,* 60 So. 3d 521, 526 (Fla. 2d DCA 2011); *see also State v. Morsman,* 394 So. 2d 408, 409 (Fla. 1981) ("[O]ne does not harbor an expectation of privacy on a front porch where salesmen or visitors may appear at any time."). Accordingly, "knock and talk" encounters, which occur when police officers "approach a dwelling on a defined path, knock on the front door, briefly await an answer, and either engage in a consensual encounter with the resident or immediately depart," do not violate the Fourth Amendment because a privacy right is not implicated. *Powell v. State,* 120 So. 3d 577, 584 (Fla. 1st DCA 2013). However, a homeowner may exhibit a subjective expectation of privacy as to the front door of their residence by "[p]utting up fences, and affirmatively taking express steps to exclude the public or other persons from using the area, seeing into it, or gaining access to the area." *Ratcliff v. State,* 783 So. 2d 1099, 1101 (Fla. 5th DCA 2001). Additionally, "knock and talk" licenses only apply to front doors, not rear or side door entrances. *Lollie v. State,* 14 So. 3d 1078, 1079, 1080 (Fla. 1st DCA 2009) (rejecting notion that in rural properties, officers may attempt to knock at side and back doors pursuant to a "knock and talk"); *Waldo v. State,* 975 So. 2d 542, 544 (Fla. 1st DCA 2008).

In this case, Appellant's brother testified that their property was posted with "No Trespassing" signs. Neither agent refuted this testimony. Instead, both agents testified that neither was looking out for a sign because both felt that they had permission to be on the property regardless of the presence of any "No Trespassing" sign. There was also an aggressive pitbull roaming the property. These facts alone makes the validity of the

agents' initial entry onto the property questionable. *Powell*, 120 So. 3d at 584 ("homeowners who post 'No Trespassing' or 'No Soliciting' signs effectively negate a license to enter the posted property" to conduct a "knock and talk"). However, even if the agents did properly enter the property, they approached the home's side door instead of the front door. This invalidated any "knock and talk" license and turned the agents' entry onto the property into a warrantless search. *Waldo*, 975 So. 2d at 543–44.

Although we conclude that the agents' approach of the side door exceeded the scope of a valid "knock and talk," even if the agents had approached the front door, suppression was still required. The facts of this case establish that the barn was part of the main house's curtilage as it was within the same fenced-in area as the main house and was used as an extension of the home's living space. Moreover it was not readily observable from outside the property. *See A.E.R v. State*, 464 So. 2d 152, 153 (Fla. 2d DCA 1985) (defining curtilage for purposes of the Fourth Amendment as "the ground and buildings immediately surrounding a dwelling and customarily used in connection with it"); *State v. Sarantopoulos*, 604 So. 2d 551, 553 (Fla. 2d DCA 1992) (recognizing that area within home's fence is typically part of its curtilage); *see also Pinyan v. State*, 523 So. 2d 718, 721 (Fla. 1st DCA 1998) (detached shed used as greenhouse was part of main house's curtilage when it was within the same fence and was protected from outside observation).

Officers are not permitted to exit the front door area and physically enter or look into other portions of the home or its curtilage pursuant to a "knock and talk." *Friedson v. State*, 207 So. 3d 961, 965 (Fla. 5th DCA 2016) (officers conducted a warrantless search when, after performing a permissible "knock and talk" which went unanswered, they stepped off the porch and shone a light in an adjacent window); *Powell*, 120 So. 3d at 584 ("Even when governmental agents are engaging in otherwise lawful 'knock-and-talks,' they can exceed the scope of a reasonable visit to a front door or porch through physical actions that encroach into areas in which the resident has a reasonable expectation of privacy."); *Lollie*, 14 So. 3d at 1079 (officers conducted a warrantless search when, after knock at front door went unanswered, they went around the back of the house to knock at a different door and, in the process, saw incriminating evidence); *Waldo*, 975 So. 2d at 543–44 (officers conducted warrantless search when, after knock at front door went unanswered, they went into side and back yard and tried to get the occupants to respond at those locations); *Maggard v. State*, 736 So. 2d 763, 765 (Fla. 2d DCA 1999) (same). Accordingly, the agents were not permitted to head towards the barn pursuant to a "knock and talk."

Despite the plethora of binding Florida law on the subject, the State urges a different conclusion, pointing to an unpublished decision from a federal district court. *U.S. v. Diaz*, 2009 WL 3675006 (N.D. Fla. Oct. 30, 2009). There, federal agents went on to the defendant's fifty acre property, which contained two residences and two barns, for the purpose of performing a "knock and talk." *Id.* at *1. As the agents were driving onto the property, they saw a truck move from one of the residences to one of the barns. *Id.* Based on the truck's movements, the agents went straight to the barn where they encountered the defendant emerging from a hidden hatch in the barn floor leading to a grow house. *Id.* After he was arrested, the defendant moved to suppress the evidence against him, arguing that the agents "exceeded the lawful purpose of their entry when they sought him out at the barn instead of going to the residence." *Id.* The district court denied the defendant's motion to suppress, ruling that an officer's "approach [pursuant to a knock and talk] is not restricted to the front door . . . [i]f it appears that someone is in or around a house, officers may take reasonable steps to initiate contact by going to other areas of the property." *Id.* at *2.[2]

The State's reliance on *Diaz* is contrary to established Florida law. *Glass v. State*, 736 So. 2d 788, 788–89 (Fla. 2d DCA 1999) (officer was not authorized to enter backyard of home during "knock and talk" because he saw people in the back yard). Further, even if we were persuaded by *Diaz*, we would not use it to affirm the agents' actions because, unlike in that case where the agents had visual confirmation of someone's presence at the barn, the agents in this case left the main house and went to the barn without knowing whether anyone was actually at the barn at the time.

Having concluded that the agents did not have the property owner's consent to enter upon the land or any structure contained thereon and that there were no exigent circumstances, the agents' "knock and talk" license was limited to, at most, entering the property and approaching the front door. By approaching the side door and then going to the barn, the agents exceeded the scope of a valid "knock and talk." These actions

[2] In support of this conclusion, the court cited to an Eleventh Circuit case, *U.S. v. Taylor*, 458 F.3d 1201 (11th Cir. 2006), which the State likewise cites. In *Taylor*, the court held that law enforcement did not exceed the lawful scope of a "knock and talk" when, after knocking on the residence's front door, they heard and saw the defendant approaching them and moved towards the defendant. *Id.* at 1204–05. The court reasoned that, "[s]uch a minor departure from the front door under these circumstances does not remove the initial entry from the 'knock and talk' exception to the warrant requirement." *Id.* at 1205. The agents' actions in this case were more than a "minor departure from the front door." Accordingly, we also reject the State's application of *Taylor* to this case.

7

violated the Fourth Amendment's guarantee against unreasonable search and seizures. Accordingly, the trial court erred in denying Appellant's motion to suppress all evidence confiscated at the barn and thereafter, regardless of a later issued warrant. *Lollie*, 14 So. 3d at 1079–80 (suppressing all evidence found after officers converted "knock and talk" into warrantless search by entering back yard even though a subsequent warrant was obtained). Appellant's "convictions are therefore reversed and, because the suppression ruling was established as a dispositive issue, the [A]ppellant is entitled to be discharged." *Id.*

*Reversed.*

GERBER, C.J., and KLINGENSMITH, J., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***